## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| In re: | Chapter 11 |
| ROBERTSHAW US HOLDING CORP., *et al.*,[1] | Case No. 24-90052 (CML) |
| Debtors. | (Jointly Administered) |
| ROBERTSHAW US HOLDING CORP., *et al.*, | |
| Plaintiffs, | |
| v. | Adversary Proc. No. 24-03024 (CML) |
| INVESCO SENIOR SECURED MANAGEMENT INC., *et al.*, | |
| Defendants. | |
| INVESCO SENIOR SECURED MANAGEMENT INC., *et al.*, | |
| Counterclaim Plaintiffs, | |
| v. | |
| ROBERTSHAW US HOLDING CORP., *et al.*, | |
| Counterclaim Defendants. | |

## DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' EMERGENCY MOTION TO ABSTAIN OR, IN THE ALTERNATIVE, TRANSFER VENUE

---

[1] The debtors in these cases (the "Debtors"), along with the last four digits of each debtor's federal tax identification number, are as follows:  Range Parent, Inc. (7956); Robertshaw US Holding Corp. (1898); Robertshaw Controls Company (9531); Burner Systems International, Inc. (8603); Robertshaw Mexican Holdings LLC (9531); Controles Temex Holdings LLC (9531); Universal Tubular Systems, LLC (8603); and Robertshaw Europe Holdings LLC (8843). The primary mailing address used for each of the foregoing debtors is 1222 Hamilton Parkway, Itasca, Illinois 60143.

> **Emergency relief has been requested.  Relief is requested not later than April 2, 2024.**
>
> **If you object to the relief requested or you believe that emergency consideration is not warranted, you must appear at the hearing if one is set, or file a written response prior to the date that relief is requested in the preceding paragraph.  Otherwise, the Court may treat the pleading as unopposed and grant the relief requested.**

Invesco Senior Secured Management, Inc. (collectively with its co-Defendants and Counterclaim Plaintiffs in the above-captioned Adversary Proceeding, "Invesco"), by and through its undersigned counsel, hereby submits this motion (the "Motion") for the Court to abstain from hearing the complaint [Adv. Proc. Dkt. No. 1] (the "Complaint") and Invesco's counterclaims [Adv. Proc. Dkt. No. 45] filed in the above-captioned adversary proceeding (the "Adversary Proceeding"), allowing the matter to proceed in New York Supreme Court (the "New York Court"). In the alternative, Invesco requests that the Court transfer venue of this proceeding to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. §§ 1404 and 1412.  In support of this Motion, Invesco respectfully submits as follows:

## PRELIMINARY STATEMENT

This Adversary Proceeding is pure and brazen forum shopping:  Robertshaw[2] and the Non-Debtor Plaintiffs seek to use this Adversary Proceeding to avoid liability for prepetition claims brought against them by Invesco in the New York Court based on a binding forum selection clause. But the mere pendency of these Chapter 11 cases does not permit the Plaintiffs to disregard the forum selection clause to allow this Court to adjudicate non-core proceedings.

The Supreme Court has held that "a valid forum-selection clause should be given controlling weight *in all but the most exceptional cases*," and that a party "acting in violation of the forum-selection clause . . . must bear the burden of showing that public-interest factors

---

[2]   Capitalized terms used but not defined in the Preliminary Statement shall have the meanings ascribed to them below.

*overwhelmingly* disfavor a transfer." *Atl. Marine Constr. Co. v. U.S. Dist. Ct.*, 571 U.S. 63, 66 (2013) (emphases added).  There are no public-interest factors present here militating against a transfer of this litigation to a New York court.  To the contrary, the New York Court – the parties' bargained-for forum – should adjudicate the dispute because it is already familiar with the relevant issues, has held a hearing of Invesco's request for a temporary restraining order, and entered the Standstill Order.

Because the claims are all non-core and governed by state law, there is no legal presumption in favor of keeping the litigation in this Court.  Indeed, there is no reason to assume that adjudicating those claims in New York would have any adverse effect on the administration of the Debtors' estates.  As the Debtors have conceded, the purported credit bid submitted by the Non-Debtor Plaintiffs is subject to a judicial determination of the identity of the Required Lenders under the Credit Agreement.  The New York Court is the most suitable court to make that determination, which hinges solely on New York law, and can make that determination in a timely manner.  A hearing on Invesco's request for a preliminary injunction was already scheduled for February 28, 2024, and was only canceled because of Robertshaw's bankruptcy filing.  This is therefore not the "exceptional case" where the Court should countenance the Plaintiffs' blatant disregard of a forum-selection clause.

Accordingly, and for the reasons set forth below, the Court should abstain from hearing the claims and allow the New York Court to continue to adjudicate them pursuant to 28 U.S.C. §§ 1334(c)(1) and (2).  Alternatively, the Court should transfer the proceeding to the United States Court for the Southern District of New York pursuant to 28 U.S.C. §§ 1404(a) and 1412.

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this Motion pursuant to 28 U.S.C. § 1334.  The Court may enter a final order with respect to the Motion consistent with Article III of the United States Constitution.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory predicates for the relief requested herein are 28 U.S.C. §§ 1334, 1404 and 1412.

## BACKGROUND[3]

### I.    The Credit Agreement and the Sham Transaction.

3.      In May 2023, the Debtors and a group of their existing lenders, including an ad hoc group of prepetition lenders consisting of Invesco, Bain Capital Credit, LP ("Bain"), Eaton Vance Management ("Eaton Vance") and Canyon Capital Advisors LLC ("Canyon"), entered into the Super-Priority Credit Agreement, dated May 9, 2023 (the "Credit Agreement"), which afforded the Debtors access to new capital to fund their operations and pay down certain of their debts.  Hewitt Decl. ¶ 36.  In July 2023, Invesco acquired via the secondary market more than 50% of the sum of the total First-Out New Money Term Loans and Second-Out Term Loans issued pursuant to the Credit Agreement.  Brooks Decl. ¶ 2.  As a majority owner of the most senior tranches of debt, Invesco became the sole "Required Lenders" under the Credit Agreement.[4]  Id.

---

[3]    For a full description of the relevant facts, Invesco respectfully refers the Court to, and incorporates as if fully set forth herein, (i) *Invesco Senior Secured Management, Inc.'s Objection to Debtor Robertshaw's Emergency Motion for Entry of an Order (A) Declaring that Automatic Stay Applies to Claims Asserted Against Non-Debtor Parties in Invesco Action or (B) Extending Automatic Stay and Preliminarily Enjoining Claims Against Non-Debtor Parties in Invesco Action* [Adv. Proc. Dkt. No. 29] (the "Stay Motion" and the "Stay Objection," respectively), (ii) the *Declaration of Andrew K. Glenn in Support of Invesco's Objections to the Debtors' DIP Motion and Bidding Procedures Motion* [Dkt. No. 263] (the "Glenn Declaration"), (iii) the *Declaration of Andrew K. Glenn in Support of Invesco's Objection to the Debtors' Stay Motion* [Adv. Proc. Dkt. No. 32] and (iv) the *Declaration of Matthew Brooks in Support of Invesco Senior Secured Management, Inc.'s Objection to Debtor Robertshaw's Emergency Motion for Entry of an Order (A) Declaring that Automatic Stay Applies to Claims Asserted Against Non-Debtor Parties in Invesco Action or (B) Extending Automatic Stay and Preliminarily Enjoining Claims Against Non-Debtor Parties in Invesco Action* [Adv. Proc. Dkt. No. 35] (the "Brooks Declaration").

[4]    The Credit Agreement defines "Required Lenders" as "Lenders having Loans representing more than 50.0% of

4

4.      By mid-November 2023, recognizing that bankruptcy was likely inevitable, Invesco, as "Required Lenders," worked in good faith with the Debtors and their equity sponsor, One Rock Capital Partners LLC ("<u>One Rock</u>") to evaluate restructuring alternatives that would maximize creditor recoveries, and agreed to a process that would position the Debtors for an orderly Chapter 11 filing and avoid the harm and disruption of a freefall bankruptcy. *Id.* ¶¶ 3, 5. The parties' agreement was memorialized in Amendment No. 4 to the Credit Agreement, which contemplated a value-maximizing restructuring framework funded by Invesco (and any of the other lenders who wished to participate, subject to Invesco's approval). *Id.* Amendment No. 4 utilized Invesco's "Required Lenders" status to maximize its potential recoveries in Chapter 11. *Id.* ¶ 6. This position is precisely what Invesco bargained for when it invested substantial time, effort, and money to acquire a majority of the senior tranches of debt. *Id.*

5.      While Invesco was working in good faith with the Debtors, Bain, Canyon and Eaton Vance (the "<u>Ad Hoc Group</u>") were plotting with One Rock (collectively with the Ad Hoc Group, the "<u>Non-Debtor Plaintiffs</u>") to strip Invesco of the Required Lenders status it had bargained for to protect its investment. Stay Obj. ¶ 13. To circumvent the Credit Agreement's clear and unequivocal prohibition of the incurrence of "additional Indebtedness that would be issued under the Loan Documents for the purpose of influencing the voting threshold" without the consent of each affected lender,[5] the Debtors and the Non-Debtor Plaintiffs formed a new strawman entity that made a purported equity contribution to Debtor Robertshaw US Holding Corp.

---

the sum of the total First-Out New Money Term Loans and Second-Out Term Loans at such time."  Credit Agreement § 1.01.  Before the Sham Transaction, Invesco owned (i) $73.8 million (62.7%) of the $117.7 million First-Out New Money Term Loans; (ii) $183.2 million (49.2%) of the $372.2 million of the Second-Out Term Loans; and (iii) $59.2 million (81.1%) of the $73 million Third-Out Term Loans.  Because Invesco owned 52.5% of the sum of the total First-Out New Money Term Loans and Second-Out Term Loans, it was the sole "Required Lenders" under the Credit Agreement.

[5]      Credit Agreement § 9.02(b)(A)(9).

("Robertshaw"). *Id.* ¶ 14. Robertshaw then used the proceeds of that equity contribution to repay the First-Out New Money Term Loans (almost) in their entirety, such that Invesco purportedly no longer met the definition of "Required Lenders." *Id.* The Non-Debtor Plaintiffs purportedly became "Required Lenders" by virtue of their Second-Out Term Loan holdings and used this fabricated status to contemporaneously amend the Credit Agreement on December 8, 2023 pursuant to Amendment No. 5 to permit the incurrence of incremental First-Out New Money Term Loans, funded by the Non-Debtor Plaintiffs, in the aggregate principal amount of $218 million. *Id.* ¶¶ 14, 22. Robertshaw then repaid the so-called "equity contribution" with the proceeds of that sham term loan while the Debtors were insolvent (the various steps Robertshaw and the Non-Debtor Plaintiffs undertook to disenfranchise Invesco are collectively referred to herein as the "Sham Transaction"). *Id.* ¶ 14.

6. The Debtors first disclosed the Sham Transaction to the Administrative Agent on December 14, almost a week after signing, when they delivered Amendment No. 5 without a complete set of transaction documents. *Id.* ¶ 22. The Administrative Agent never consented to the Sham Transaction or received *any* of the documents the Debtors were required to provide it under Amendment No. 5 as a condition precedent to closing the Sham Transaction. *Id.* The Administrative Agent immediately resigned without signing Amendment No. 5—also a condition precedent to its effectiveness.[6] *Id.*

A. **The Credit Agreement's Choice-of-Law and Forum-Selection Provisions.**

7. The Credit Agreement provides that "ANY CLAIM, CONTROVERSY OR DISPUTE ARISING UNDER OR RELATED TO [the Credit Agreement] . . . SHALL BE

---

[6] Amendment No. 5 § 7 (listing as a condition precedent that Amendment No. 5 "is duly executed by the Borrowers, Holdings, the Guarantors, each 2023-12 Incremental Term Loan Lender, the Existing Lenders constituting at least the Required Lenders, *the Administrative Agent* and the Collateral Agent.") (emphasis added).

GOVERNED BY, AND CONSTRUED AND INTERPRETED IN ACCORDANCE WITH, THE

LAWS OF THE STATE OF NEW YORK."  Credit Agreement § 9.10(a).

8.     The Credit Agreement further contains a forum-selection clause by which:

> EACH PARTY HERETO HEREBY *IRREVOCABLY AND UNCONDITIONALLY* SUBMITS, FOR ITSELF AND ITS PROPERTY, TO THE *EXCLUSIVE* JURISDICTION OF ANY U.S. FEDERAL OR NEW YORK STATE COURT SITTING IN THE BOROUGH OF MANHATTAN, IN THE CITY OF NEW YORK (OR ANY APPELLATE COURT THEREFROM) OVER ANY SUIT, IN ANY ACTION OR PROCEEDING ARISING OUT OF OR RELATING TO ANY LOAN DOCUMENTS AND AGREES THAT ALL CLAIMS IN RESPECT OF ANY SUCH ACTION OR PROCEEDING SHALL (EXCEPT AS PERMITTED BELOW) BE HEARD AND DETERMINED IN SUCH NEW YORK STATE OR, TO THE EXTENT PERMITTED BY LAW, FEDERAL COURT.

*Id.* § 9.10(b) (emphases added).

9.     The Credit Agreement further provides that "[E]ACH OF THE PARTIES HERETO

HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ANY OBJECTION TO THE

LAYING OF VENUE OF ANY SUCH SUIT, ACTION OR PROCEEDING BROUGHT IN ANY

SUCH COURT AND ANY CLAIM THAT ANY SUCH SUIT, ACTION OR PROCEEDING HAS

BEEN BROUGHT IN AN INCONVENIENT FORUM."  *Id.*

10.     The Credit Agreement only allows "THE ADMINISTRATIVE AGENT AND

LENDERS . . . TO BRING PROCEEDINGS AGAINST ANY LOAN PARTY IN THE COURTS

OF ANY OTHER JURISDICTION SOLELY IN CONNECTION WITH THE EXERCISE OF

ANY RIGHTS UNDER ANY COLLATERAL DOCUMENT," *i.e.*, the Pledge and Security

Agreement, the Mortgages and any other documents granting a Lien upon the Collateral as security

for payment of the Secured Obligations.  *Id.* § 1.01.

## II.    **The New York Action.**

11.    On December 20, 2023, in accordance with the Credit Agreement's forum-selection clause, Invesco filed a complaint in the New York Court (the "New York Action") asserting claims for (i) breach of the Credit Agreement against Robertshaw and the members of the Ad Hoc Group, (ii) breach of the covenant of good faith and fair dealing against Robertshaw and the members of the Ad Hoc Group, (iii) tortious interference against One Rock, and (iv) intentional and constructive fraudulent transfer against the members of the Ad Hoc Group and One Rock.  Invesco also filed a motion seeking a preliminary injunction and temporary restraining order (a) enjoining any transactions or arrangements purportedly requiring only the consent or direction of the Ad Hoc Group and/or One Rock, including but not limited to those in Amendment No. 5, (b) enjoining the execution of Amendment No. 5 by any Administrative Agent (or successor thereto or assignee thereof), and (c) reinstating Amendment No. 4.

12.    On December 22, 2023, the New York Court heard oral argument on Invesco's request for a temporary restraining order.  At the hearing, Judge Schecter was critical of the Sham Transaction and skeptical of defendants' arguments that the transaction was permissible.  Indeed, counsel for the Ad Hoc Group conceded at the February 15, 2024 first-day hearing before this Court that the TRO hearing "did not go swimmingly" for his clients.  Feb. 15 Hr'g Tr. at 28:24.

13.    In light of the New York Court's remarks, the parties agreed to a standstill agreement, which the court so-ordered on December 22, 2023 (the "Standstill Order"), providing that under no circumstances shall Robertshaw, One Rock, and the Ad Hoc Group (i) "engage in or make, or cause Defendant Robertshaw to engage in or make, any transactions, arrangements, amendments, variations, adjustments, waivers, compromises, or settlements under or pursuant to the Loan Documents that require the consent or approval of Required Lenders under the Credit

Agreement," (ii) appoint a successor Administrative Agent without Invesco's consent and approval, or (iii) cause the successor Administrative Agent to execute Amendment No. 5.[7]  Glenn Decl., Ex. E (Standstill Order) ¶¶ 2-3.

### III.    The Bankruptcy Filing.

14.    On February 15, 2024 (the "Petition Date"), after depositions of Invesco's representatives in the New York Action had concluded and *one day* before Invesco was scheduled to begin deposing representatives of the Non-Debtor Plaintiffs and Robertshaw, the Debtors filed these Chapter 11 cases.  The Chapter 11 filing was strategically timed to utilize the New York Action while it suited Robertshaw and the Non-Debtor Plaintiffs, but to avoid a ruling from Judge Schecter on the merits.  The Non-Debtor Plaintiffs, having purportedly acquired control of the Debtors' restructuring process illegally via the Sham Transaction, caused the Debtors to file Chapter 11 on February 15 because they knew they would lose the February 28 preliminary injunction hearing in the New York Action and are hoping for a better outcome in this Court.

15.    On the Petition Date, the Debtors filed a motion seeking approval of DIP financing provided by the Ad Hoc Group to fund the Chapter 11 cases [Dkt. No. 23].  The Debtors' DIP budget [Dkt. No. 23-1] shows that the Debtors did not rush to file Chapter 11 because they were running out of cash to run the business.  The Debtors' liquidity shortfall was inevitable, but it was not imminent.

16.    Also on the Petition Date, the Debtors filed a Restructuring Support Agreement (the "RSA"), which requires the Debtors to obtain an order approving the sale of their assets to the Non-Debtor Plaintiffs within 75 days after the Petition Date, and a motion seeking approval of the bidding procedures [Dkt. No. 34].  The RSA and the DIP facility, which the Debtors negotiated

---

[7]    On January 31, 2024, Judge Schecter extended the Standstill Order through the earlier of March 13, 2024 and the entry of an order regarding the preliminary injunction motion.

and executed in secret with the Non-Debtor Plaintiffs prepetition, are void *ab initio* because they inherently—and explicitly—hinge on the Non-Debtor Plaintiffs' alleged status as "Required Lenders" under the Credit Agreement.[8]   The RSA, the DIP facility, and the transactions contemplated thereby, which also presume that the Non-Debtor Plaintiffs are Required Lenders, indisputably are "transactions [or] arrangements . . . that require the consent or approval of Required Lenders under the Credit Agreement," which the Standstill Order prohibits.  Standstill Order ¶ 2.

17.     On March 4, 2024, Invesco filed objections to the DIP and bid procedures motions [Dkt. Nos. 262, 265] arguing, among other things, that the proposed DIP facility and RSA were negotiated and executed in contempt of the Standstill Order and, if approved, would deprive Invesco of substantive and procedural due process by deciding the Sham Transaction litigation in the Non-Debtor Plaintiffs' favor without any adjudication of the merits of Invesco's claims.

## IV.     The Adversary Proceeding and Stay Motion.

18.     On the Petition Date, the Debtors commenced the Invesco Adversary Proceeding seeking declaratory relief pursuant to 28 U.S.C. § 2201 (the "Declaratory Judgment Act") with respect to the exact same issues raised in the New York Action.  Specifically, the Debtors seek a declaration that "(a) the December 2023 Transactions did not breach the [Credit Agreement]; (b) Robertshaw and the [Ad Hoc Group] have not breached the implied covenant of good faith and fair dealing through the [Sham Transaction] or any other action alleged by Defendant Invesco;

---

[8]     RSA at 2 ("WHEREAS, as of the date hereof, the Initial Consenting Lenders and the Sponsor, in the aggregate, hold, own, or control approximately 99.97% and 51.4% of the aggregate outstanding principal amount of the Prepetition First Out Super-Priority Claims and Prepetition Second Out Super-Priority Claims, respectively"); Hewitt Decl. ¶ 51 ("Following the prepayment of a portion of the First-Out Superpriority Facility and the retirement of the Prepetition ABL Facility, the Ad Hoc Group became the "Required Lenders" under the SuperPriority Credit Agreement by virtue of their holding over 50.01% of the outstanding principal obligations under the remaining Prepetition First-Out and Prepetition Second-Out Superpriority Facilities.").

(c) One Rock did not tortiously interfere with the [Credit Agreement]; (d) Amendment No. 5 and the [Credit Agreement] as amended by Amendment No. 5 are valid and enforceable contracts; (e) no Event of Default has occurred under the [Credit Agreement]; and (f) no payments made by or liens or contractual rights given by Robertshaw in connection with the [Sham Transaction] constitute fraudulent transfers[.]"  Compl. ¶ 84.  The Debtors also seek injunctive relief extending the automatic stay to the Non-Debtor Plaintiffs.  *Id.* ¶¶ 85–99.

19.     The Debtors filed the Stay Motion on the same day that they commenced the Invesco Adversary Proceeding, seeking an order declaring that (i) the automatic stay applies to prevent continued prosecution of the claims asserted against the Non-Debtor Plaintiffs in the New York Action; or (ii) in the alternative, that the automatic stay should be extended to stay claims against the Non-Debtor Plaintiffs in the New York Action pursuant to Section 362(a) and 105(a) of the Bankruptcy Code.  Stay Motion at 1.  Invesco has objected to the Stay Motion, which has yet to be heard by the Court.

20.     On March 12, 2024, Invesco filed *Invesco's Answer, Affirmative Defenses, and Counterclaims* [Adv. Proc. Dkt. No. 45] (the "Answer"), asserting counterclaims (the "Counterclaims") solely against Robertshaw because Invesco intends to continue to pursue its claims in the New York Action against the Non-Debtor Plaintiffs, subject to the Court's ruling on the Stay Motion.  Answer at 35–36.  The Counterclaims consist of: (i) a request for a declaratory judgment that Robertshaw, by entering into the Sham Transaction, breached the Credit Agreement or, in the alternative, breached the implied covenant of good faith and fair dealing; and (ii) a request for a declaratory judgment that Invesco retains the absolute and relative rights it had prior to the Sham Transaction, including all rights of Required Lenders under the Credit Agreement.  *Id.* at 36–39.

21.     All the claims brought by the parties in the Complaint and the Counterclaims are governed by New York law pursuant to the Credit Agreement's choice-of-law provision because those claims all arise under or are related to the Credit Agreement.  Credit Agreement § 9.10(a).

## RELIEF REQUESTED

22.     Invesco respectfully requests that this Court abstain from hearing the Complaint and the Counterclaims in this Adversary Proceeding pursuant to 28 U.S.C. § 1334, allowing the dispute to proceed in the New York Court.  In the alternative, Invesco respectfully requests that the Court transfer venue of this proceeding to the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. §§ 1404 and 1412.

## BASIS FOR RELIEF

**I.     Plaintiffs' and Invesco's Claims for Declaratory Relief Are Non-Core.**

23.     Plaintiffs seek a declaratory judgment to resolve state law claims related to the Credit Agreement, including a declaration that (i) the Sham Transaction did not breach the Credit Agreement, (ii) Robertshaw and the Non-Debtor Plaintiffs did not breach the implied covenant of good faith and fair dealing through the Sham Transaction, (iii) One Rock did not tortiously interfere with the Credit Agreement, (iv) Amendment No. 5 and the Credit Agreement as purportedly amended thereby are valid and enforceable contracts, (v) no "Event of Default" has occurred under the Credit Agreement, and (vi) no payments made by or liens or contractual rights given by Robertshaw in connection with the Sham Transaction constitute fraudulent transfers. Compl. ¶ 84.  Invesco, in its Counterclaims, seeks a declaration that (i) Robertshaw, by entering into the Sham Transaction, breached the Credit Agreement or, in the alternative, breached the implied covenant of good faith and fair dealing, and (ii) Invesco retains the absolute and relative rights it had prior to the Sham Transaction, including all rights of Required Lenders under the Credit Agreement.  Answer at 39-40.

24.     The Declaratory Judgment Act is not a grant of jurisdiction to federal courts; rather, it only creates an additional remedy for claims over which such courts already have jurisdiction. *See Diamond Servs. Corp. v. Curtin Mar. Corp.*, No. 4:22-CV-2117, 2023 U.S. Dist. LEXIS 50510, at *10 (S.D. Tex. Mar. 6, 2023) ("a federal court already must have jurisdiction under another federal statute before a plaintiff can invoke the [Declaratory Judgment] Act."); *Frye v. Anadarko Petro. Corp.*, 953 F.3d 285, 293 (5th Cir. 2019) (same).  Accordingly, proceedings involving declaratory relief are subject to the general jurisdictional and referral provisions of 28 U.S.C. §§ 1334 and 157, respectively.

25.     As the Fifth Circuit has long recognized, a proceeding that "does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy" is "not a core proceeding." *Matter of Wood*, 825 F.2d 90, 97 (5th Cir. 1987); *Legal Xtranet, Inc. v. AT&T Mgmt. Servs., L.P. (In re Legal Xtranet, Inc.)*, 453 B.R. 699, 702 (Bankr. W.D. Tex. 2011) (citing *In re Exide Techs.*, 544 F.3d 196, 207 (3d Cir. 2008)) (same).  The fact that "a proceeding may have *some* bearing on a bankruptcy case" does not make a claim core.  *Stern v. Marshall*, 564 U.S. 462 (2011) (emphasis in original).

26.     The declaratory relief the Plaintiffs seek requires a court to interpret the Credit Agreement pursuant to New York law and determine the existence of claims for breach of contract, breach of the covenant of good faith and fair dealing, tortious interference and fraudulent conveyance, which are also governed by New York law.  Similarly, the Counterclaims asserted by Invesco require a court to interpret the Credit Agreement pursuant to New York law and determine the existence of claims for breach of contract and breach of the covenant of good faith and fair dealing under New York law.

13

27.     Because the "essential issue in the proceeding is whether the [Debtors] are liable to [Invesco] under state law," the proceeding is non-core.  *Wood*, 825 F.2d at 98.  Indeed, this Court consistently has held that breach of contract is a quintessential non-core claim.  *See Wesco Aircraft Holdings, Inc. v. SSD Invs. (In re Wesco Aircraft Holdings, Inc.)*, No. 23-3091, 2024 Bankr. LEXIS 85, at \*62–63 (Bankr. S.D. Tex. Jan. 14, 2024) (holding that "state-law based tort and contract claims, that could be decided outside the bankruptcy court" are "not core"); *Petro. Prods. & Servs. V. McClinton Energy Grp., LLC (In re Petro. Prods. & Servs.)*, 561 B.R. 662, 665 (Bankr. S.D. Tex. 2016) (citing *Wood*, 825 F.2d at 96) ("Here, Petroleum Products' claims do not invoke a substantive right provided by Title 11 nor are they of a nature that could only arise in a bankruptcy case—they are simply state contract claims."); *WRT Creditors Liquidation Tr. V. C.I.B.C. Oppenheimer Corp.*, 75 F. Supp. 2d 596, 610 (S.D. Tex. 1999) ("a pre-petition, state law breach of contract action—definitely constituted a noncore proceeding") (citation omitted); *Coho Oil & Gas, Inc. v. Finley Res., Inc. (In re Coho Energy, Inc.)*, 309 B.R. 217, 222 (Bankr. N.D. Tex. 2004) (finding that "an action seeking damages for pre-petition breaches of pre-petition contracts and for pre-petition tortious conduct" was "a non-core proceeding which neither arises in nor under title 11").  The breach of the implied covenant of good faith and fair dealing claim and tortious interference are no different:  the claim would exist even if the bankruptcy cases were never filed, and in fact, could not have been brought in federal court without the existence of a case under Title 11.

28.     Furthermore, claims that arose prepetition and "could proceed in another court even in the absence of bankruptcy—are not core proceedings."  *Wood*, 825 F.2d at 96; *see also Garner v. BankPlus*, 470 B.R. 402, 408 (S.D. Miss. 2012) (granting motion to abstain and remand where claims were "based entirely on state law" and "arose entirely before the debtors filed their

bankruptcy petitions and, but for the bankruptcy filings, could have proceeded in state court.").

Not only could the declaratory relief that Plaintiffs and Invesco are seeking "proceed in another

court" absent these Chapter 11 cases, but *the same relief* was in fact sought by Invesco in the New

York Action before the Petition Date.  In itself, that demonstrates the claims are non-core.  *See*

*Premier Pipe, LLC v. J.D. Fields & Co. (In re Hallwood Energy L.P.)*, No. 09-03202, 2009 Bankr.

LEXIS 2398, at *13–14 (Bankr. S.D. Tex. Aug. 24, 2009) (holding that "state law breach of

contract claims" asserted in an adversary proceeding which were asserted in a prepetition action

were "non-core").

       29.     Whether the outcome of these non-core proceedings may have an effect on the

Chapter 11 cases is irrelevant.  As this Court recently held in *Wesco*:

> [The] contract and tort claims are state law-based claims that could
> have been adjudicated in state court irrespective of Wesco's
> bankruptcy filing.  The suit is not based on any right created by the
> Bankruptcy Code and is not one that could arise only in the context
> of a bankruptcy case.  ***It is irrelevant whether a determination of
> the claims may in some way lead to the determination of other
> issues concerning the administration of the estate***.  This does not
> convert otherwise state-law based tort and contract claims, that
> could be decided outside the bankruptcy court, into core
> proceedings.

*Wesco*, 2024 Bankr. LEXIS 85, at *63–64 (emphasis added); *cf. Fire Eagle L.L.C. v. Bischoff (In*

*re Spillman Dev. Grp., Ltd.*, 710 F.3d 299, 306 (5th Cir. 2013) (state law claim considered "core"

where it was "inextricably intertwined with the interpretation of a right created by federal

bankruptcy law—the interpretation of the effect of [a buyer's] credit bid is in fact determinative of

[the buyer's] claim.").  Here, adjudicating the state law claims does not require the interpretation

of federal bankruptcy law or "the effect" of a credit bid for the simple reason that no credit bid has

been approved by the Court.  In fact, the Debtors have conceded that the consummation of the

proposed sale—and whether the Non-Debtor Plaintiffs are permitted to direct the credit bid—
would be subject to the resolution of this Adversary Proceeding.

30.     Accordingly, all the claims for declaratory relief sought by Plaintiffs and Invesco
are non-core proceedings.

## II.     Abstention Is Mandatory Under 28 U.S.C. § 1334(c)(2).

31.     28 U.S.C. § 1334 grants federal district courts jurisdiction over bankruptcy
proceedings and mandates that a court abstain from hearing "related to," non-core proceedings
under certain circumstances present here.[9]   Referred to as the mandatory abstention provision,
Section 1334(c)(2) provides:

> Upon timely motion of a party in a proceeding based upon a State
> law claim or State law cause of action, related to a case under title
> 11 but not arising under title 11 or arising in a case under title 11,
> with respect to which an action could not have been commenced in
> a court of the United States absent jurisdiction under this section,
> the district court shall abstain from hearing such proceeding if an
> action is commenced, and can be timely adjudicated, in a State
> forum of appropriate jurisdiction.

28 U.S.C. § 1334(c).

32.     Mandatory abstention under 28 U.S.C. § 1334(c)(2) addresses circumstances
"under which a bankruptcy court is required to decline the exercise of subject matter jurisdiction
over a dispute, notwithstanding its existence under § 1334(b)." *In re Delta Petroleum Corp.*, No.
11-14006, 2013 WL 3866484, *4 (Bankr. E.D. Tex. July 24, 2013).  For mandatory abstention to
apply, the statute requires the following: (i) a timely motion for mandatory abstention, (ii) each
claim in question has no independent basis for federal jurisdiction, other than 28 U.S.C. § 1334(b),

---

[9]     Although 28 U.S.C. § 157 generally governs bankruptcy courts' jurisdiction over matters referred from district
courts, a bankruptcy court's jurisdiction under Section 157 requires that the district court first have jurisdiction
over the matter pursuant to Section 1334.

(iii) each claim in question is non-core in nature, (iv) an action has been commenced in state court, and (v) the action could be adjudicated timely in state court. *Pearl Res. LLC v. Parsley Energy Operations, LLC (In re Pearl Res. LLC)*, No. 20-31585, 2023 Bankr. LEXIS 426, at *6 (Bankr. S.D. Tex. Feb. 17, 2023) (citing *Cadle Co. v. Moore (In re Moore)*, 739 F.3d 724, 728–29 (5th Cir. 2014)).

33.     "If the requirements for mandatory abstention are met, a federal court has no discretion—it must abstain." *Lain v. Watt (In re Dune Energy, Inc.)*, 575 B.R. 716, 726 (Bankr. W.D. Tex. 2017).  Here, each of the elements necessary for mandatory abstention are satisfied.

34.     **The Motion is timely.**  Section 1334 (c)(2) does not define "timely," and courts apply a case-by-case approach.  *See Pearl Res. Operating Co., LLC v. Transcon Cap., LLC (In re Pearl Res. LLC)*, No. 22-3297, 2022 Bankr. LEXIS 3462, at *7 (Bankr. S.D. Tex. Dec. 6, 2022). Here, the Motion is being filed just weeks after the service of the Complaint.  Moreover, there has been no litigation and the Court has not yet ruled on any substantive issues.  The Motion is therefore timely.  *See Ramirez v. Rodriguez (In re Ramirez)*, 413 B.R. 621, 626 (Bankr. S.D. Tex. 2009) (finding that motion to abstain was timely when filed within 30 days after proceeding was removed to the bankruptcy court); *Gatson v. Country Cable*, No. 96-0207, 1996 U.S. Dist. Lexis 14004, at *24 (S.D. Ala. July 17, 1996) (motion to abstain was timely where it "was made early enough in the case to prevent the waste of the Court's resources and plaintiff has not caused any discernible prejudice" to the other party); *Dune Energy*, 575 B.R. at 726–27 (finding motion to abstain filed 45 days after removal to be timely).

35.     **No independent federal jurisdiction.**  None of the Plaintiffs' or Invesco's claims for declaratory relief could have been commenced in federal court absent jurisdiction under Section 1334.  Indeed, the sole jurisdictional basis the Plaintiffs cite in alleging this Court's

jurisdiction is that Robertshaw is a debtor in a Chapter 11 case.  *See* Compl. ¶¶ 10–14.  But the Court does not have "federal question" jurisdiction over the claims because they do not "aris[e] under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.  For purposes of diversity jurisdiction, a corporation is a citizen of "every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1).  Here, there is no complete diversity of parties because Robertshaw and all but one of the other Plaintiffs are citizens of Delaware,[10] as is Defendant and Counterclaim Plaintiff Invesco Senior Secured Management, Inc.[11]  Accordingly, there is no basis for federal court jurisdiction over the claims other than Section 1334.

36.     **The claims are non-core.**  As explained above, none of the claims asserted by the Plaintiffs and Invesco "invoke a substantive right created by the federal bankruptcy law," and none of them "could exist outside of bankruptcy."  *See Wood*, 825 F.2d at 97.  As such, they are "not a core proceeding."  *Id.*

37.     **A state court action has been commenced.**  A state court action was already "commenced . . . in a State forum of appropriate jurisdiction."  28 U.S.C. § 1334(c)(2).  As described, Invesco filed suit in the New York Court *concerning the exact same issues* on December 20, 2023.  In the two months preceding the Petition Date, the New York Court held oral argument on Invesco's motion for a temporary restraining order, entered the Standstill Order, and the parties engaged in written and witness discovery in preparation for the preliminary injunction hearing, which was scheduled for February 28, 2024.  The New York Action was swiftly advancing in the New York Court before being halted by the Debtors' bankruptcy filing—the day before the

---

[10]   *See* Credit Agreement at 1 ("ROBERTSHAW US HOLDING CORP., a Delaware corporation"); Compl. ¶¶ 16– 19 ("Bain Capital is a Delaware limited liability partnership," "Canyon Capital is a Delaware LLC," "Eaton Vance is a Massachusetts business trust," "One Rock is a Delaware LLC").

[11]   *See* Answer at 17.

Plaintiffs were to produce witnesses for depositions.  This requirement is therefore satisfied.  *See LJM2 Co-Inv., L.P. v. LJM2 Capital Mgmt., L.P.*, No. 02-1498, 2003 WL 431684, at *3 (D. Del. Feb. 24, 2003) (mandatory abstention appropriate where case was commenced in state court of appropriate jurisdiction).

38.     **Timely adjudication.**  "The party moving for mandatory abstention need not show that the action can be more timely adjudicated in state court, but only that the matter can be timely adjudicated in state court."  *J.T. Thorpe Co. v. Am. Motorists*, No. 02-4598, 2003 WL 23323005, at *3 (S.D. Tex. 2003 June 9, 2003).  The claims here can "be timely adjudicated" because the New York Court has already conducted the TRO hearing, entered the Standstill Order, and received Plaintiffs' briefs in opposition to Invesco's motion for preliminary injunction.  Moreover, discovery was well underway in the New York Action when the Debtors commenced these Chapter 11 cases. A hearing on Invesco's request for a preliminary injunction—which was already scheduled for February 28, 2024 and was only canceled because of Robertshaw's bankruptcy filing—can be rescheduled quickly.   If Invesco prevails at that hearing, the Non-Debtor Plaintiffs will be precluded from attempting to use their disputed claims and Required Lenders status to provide the DIP facility and credit bid for the Debtors' assets and the Debtors will be free to choose an alternative path.   Accordingly, Invesco easily satisfies this requirement.  *See Allied Mech. & Plumbing Corp. v. Dynamic Hostels Hous. Dev. Fund Co.*, 62 B.R. 873, 878 (Bankr. S.D.N.Y. 1986) (requirement satisfied where "it appears that discovery proceedings are continuing, the state court has rendered decisions on motions and the case is actively proceeding towards a trial . . . . [T]his court is satisfied that the state law breach of contract dispute between the parties can be efficiently and timely adjudicated in the state forum.").

39.     Critically, the rushed sale process by which the Debtors seek to sell their assets to the Non-Debtor Plaintiffs via a credit bid does not render the New York Court litigation "untimely." "In deciding whether a matter may be timely adjudicated, perhaps the single most important factor is the nature of the underlying chapter [11] proceeding." *Joremy Enters. v. Hershkowitz (In re New 118th LLC)*, 396 B.R. 885, 894 (Bankr. S.D.N.Y. 2008) (citation omitted).  Where, as here, a debtor is liquidating its assets, "there is no administrative urgency or plan of reorganization to facilitate" and "timely adjudication can be weighed relatively lightly."  *See Coop. Rabobank U.A. v. Crowe LLP (In re Miami Metals I, Inc.)*, 625 B.R. 593, 604 (Bankr. S.D.N.Y. 2021).  "This is true even though the state law claim and any related contribution claim will be part of any liquidation." *Id.* Accordingly, there is no reason—other than the self-serving milestones included in the RSA—to force a rushed sale process in these Chapter 11 cases.  Nor can that process be weaponized against Invesco to eviscerate its contractual right to litigate its claims in the New York Court.

40.     In sum, application of the mandatory abstention factors under Section 1334(c)(2) shows that this Court must abstain from hearing all claims asserted by the Plaintiffs and Invesco in this Adversary Proceeding.

**III.     Permissive Abstention Is Warranted Under 28 U.S.C. § 1334(c)(1).**

41.     Under 28 U.S.C. § 1334(c)(1), this Court may and should permissively abstain from deciding the claims asserted in this Adversary Proceeding.  Permissive abstention vests the Court with the discretion to abstain from hearing a case:

> Except with respect to a case under chapter 15 of title 11, nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1).

42.     "[S]ection 1334(c)(1) affords 'broad power to abstain whenever appropriate' and '[t]he abstention provisions of the Act demonstrate the intent of Congress that concerns of comity and judicial convenience should be met, not by rigid limitations on the jurisdiction of federal courts, but by the discretionary exercise of abstention when appropriate in a particular case.'" *In re Best*, 417 B.R. 259, 274 (Bankr. E.D. Pa. 2009) (quoting *Wood*, 825 F.2d at 93) (alteration in original).   In *Wood*, the Fifth Circuit noted that the discretionary abstention provision of § 1334(c)(1) helps prevent the broad language of § 1334(b) from bringing into federal court matters which should be left to state courts to decide.  *See id.*

43.     This Court has summarized the factors relevant to permissive abstention:

(1)  Effect or lack thereof on the efficient administration of the estate if the court recommends [remand or] abstention;

(2)  Extent to which state law issues predominate over bankruptcy issues;

(3)  Difficult or unsettled nature of applicable law;

(4)  Presence of related proceeding commenced in state court or other non-bankruptcy proceeding;

(5)  Jurisdictional basis, if any, other than § 1334;

(6)  Degree of relatedness or remoteness of proceeding to main bankruptcy case;

(7)  The substance rather than the form of an asserted core proceeding;

(8)  The feasibility of severing state law claims from core bankruptcy matters to allow judgment to be entered in state court with enforcement left to the bankruptcy court;

(9)  The burden of the bankruptcy court's docket;

(10)  The likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11)  The existence of a right to a jury trial;

(12)  The presence in the proceeding of non-debtor parties;

(13)  Comity; and

(14)  Possibility of prejudice to other parties in the action.

*In re Houston Reg'l Sports Network, L.P.*, 514 B.R. 211, 215 (Bankr. S.D. Tex. 2014).

44.     Courts have held that evaluating these factors "is not a mathematical formula." *LaRoche Indus., Inc. v. Orica Nitrogen LLC (In re LaRoche Indus., Inc.)*, 312 B.R. 249, 255 (Bankr. D. Del. 2004); *see also Platte River Bottom, LLC v. Advantage Bank (In re Platte River Bottom, LLC)*, No. 13-13098, 2015 WL 3897453, at *13 (Bankr. D. Colo. June 23, 2015) ("[I]n the end, the decision to abstain is always made on the basis of the totality of circumstances and the above recognized factors do not serve to limit the circumstances that a court may consider relative to a given case or the weight a court chooses to give to particular factors.").  Nevertheless, the application of these factors is straightforward here because *virtually all* of the factors weigh heavily in favor of abstention.

45.     **Forum shopping.**  The Plaintiffs commenced this Adversary Proceeding for the purpose of changing the venue of the parties' dispute in violation of bankruptcy law and Invesco's contractual right to have its claims against Robertshaw and the Non-Debtor Plaintiffs decided under New York law in a New York venue as the Credit Agreement requires.  Credit Agreement § 9.10.  The Debtors have also sought to extend the automatic stay to halt the New York Action for the benefit of the Non-Debtor Plaintiffs so that they can evade the reach of the New York Court, which they admit was adverse to them.  As the Ad Hoc Group's counsel stated to this Court at the first-day hearing, the hearing on the temporary restraining order in New York that resulted in the Standstill Order against the Plaintiffs "did not go swimmingly."[12]

46.     The Court should not permit the Plaintiffs to weaponize the bankruptcy process to avoid answering for the Sham Transaction before the New York Court—the first-filed action and the parties' chosen forum.  This factor therefore weighs heavily in favor of abstention.  *See Platte River Bottom*, 2015 WL 3897453, at *14 ("[T]he strong suggestion of a forum shopping motive

---

[12]   Feb. 15 Hr'g Tr. at 28:24.

that arises from the circumstances of this case reinforces the Court's conviction that abstention is required and serves the interests of comity and respect for state law.").

47.     __The principle of comity warrants abstention.__  Because the abstention doctrine is premised upon respect for state courts and state law, primary consideration often is given to two factors: the primacy of state law issues and the difficulty or unsettled nature of state law.  *See In re Fruit of the Loom, Inc.*, 407 B.R. 593, 600 (Bankr. D. Del. 2009) ("Some factors are more substantial than others, such as . . . whether the claim involves only state law issues"); *In re Stephen Smith Home for The Aged, Inc.*, 80 B.R. 678, 683 (Bankr. E.D. Pa. 1987) (describing as an aspect of comity and federalism "the recognition of important state interests in the outcome of various disputes.") (internal citations omitted).  The Plaintiffs' and Invesco's claims for declaratory relief raise and implicate contested issues of fact and state law that would require this Court to make determinations concerning the correct interpretation of the Credit Agreement under New York law, ***which the New York Court has already opined upon during the TRO hearing***.  In other words, this Adversary Proceeding would require this Court to review, assess, and rule on many of the issues that have been actively litigated in the New York Action.  This factor therefore weighs heavily in favor of abstention.  *See In re D'Angelo*, 491 B.R. 395, 406 (E.D. Pa. 2013) ("As 'comity is a significant consideration in permissive abstention,' the Court finds that the presence of a related state proceeding weighs in favor of permissive abstention." (citing *In re Kessler*, 430 B.R. 155, 167 (Bankr. M.D. Pa. 2010)).

48.     __There are *no* pending "core" claims.__  As explained above, *none* of the claims asserted by the Plaintiffs and Invesco "invoke a substantive right created by the federal bankruptcy law," and none of them "could exist outside of bankruptcy."  *See Wood*, 825 F.2d at 97.  As such, there is no need to "sever" non-core claims from core ones.  *See Special Value Continuation*

*Partners, L.P. v. Jones*, No. 11-3304, 2011 Bankr. LEXIS 4475, at \*28 (Bankr. S.D. Tex. Nov. 10, 2011) (finding that "it would not be problematic to sever this lawsuit from the core bankruptcy proceedings.  This lawsuit is between nondebtors, is based entirely on state law causes of action, and is based on events occurring prior to the bankruptcy proceedings.").

49.     **The estate can be efficiently administered.**  There is nothing before the Court to suggest that abstention would interfere with the efficient administration of the bankruptcy estate. The validity of Amendment No. 5 and whether Invesco is the Required Lenders under the Credit Agreement will have to be adjudicated, *whether or not this Court abstains*, before it can be determined whether the Non-Debtor Plaintiffs may direct the Administrative Agent to submit a credit bid for the Debtors' assets.  Critically, there is no reason to assume that this Court can adjudicate these issues more efficiently than the New York Court.

50.     **Difficult state law issues predominate.**  Resolution of state law breach of contract and related issues is the *sine qua non* of this Adversary Proceeding, while "bankruptcy issues" should have no bearing on its resolution.  Determination of those issues is governed wholly by New York state law and those issues have been, and should be, decided by the New York Court. Moreover, while Invesco's position is that the clear terms of the Credit Agreement support its claims herein and in the New York Action, the complexity of the scheme concocted by the Plaintiffs to circumvent the Credit Agreement through the Sham Transaction renders some of the factual and legal issues highly complex.  This factor therefore favors abstention.

51.     **No independent basis for federal jurisdiction.**  As stated above, there is no basis for jurisdiction over the claims other than Section 1334.  *See Off. Comm. of Unsecured Creditors of Integrated Health Servs. Inc. v. Elkins (In re Integrated Health Servs., Inc.)*, 291 B.R. 615, 621

(Bankr. D. Del. 2003) (favoring abstention where bankruptcy court had neither diversity jurisdiction nor federal question jurisdiction).  This factor therefore favors abstention.

52.    **Presence of related proceeding commenced in state court or other non-bankruptcy proceeding.**  As discussed *supra*, the New York Action had been actively litigated before the Debtors commenced these Chapter 11 cases and there is no independent federal jurisdiction over this proceeding other than "related-to" bankruptcy jurisdiction.

53.    **The claims do not relate to the main bankruptcy case.**  That the claims have no degree of "relatedness" to the Chapter 11 cases is demonstrated by the fact that Invesco commenced the New York Action—which involves the exact same state-law issues as this Adversary Proceeding—prepetition.  Indeed, if it were not for the pendency of these Chapter 11 cases, the New York Action would have continued uninterrupted.

54.    **There are non-Debtors present in the proceeding.**  Four of the five Plaintiffs—Bain, Canyon, Eaton Vance and One Rock—are non-Debtors.  This factor therefore favors abstention.  *See IO at Tech Ridge, LP v. Hartford Fire Ins. Co. (In re IO at Tech Ridge, LP)*, 646 B.R. 884, 893 (Bankr. W.D. Tex. 2018) (finding that this factor favored abstention where "[a]ll parties but [one] are non-debtor parties.").

55.    **No possibility of prejudice to other parties.**  All parties to this Adversary Proceeding have submitted to the exclusive jurisdiction of the New York Court pursuant to the express terms of the Credit Agreement.  Moreover, as explained, adjudicating the claims in the New York Court will not hinder or affect the administration of the Debtors' estates.  As such, no other party in this action will be prejudiced if the Court abstains from hearing the claims.  Conversely, Invesco would be significantly prejudiced if it were not allowed to continue the New York Action, which it commenced prepetition as it was authorized to do under the Credit

Agreement, while expending considerable time and resources.  This factor therefore favors abstention.  *See Pearl Res. v. Transcon Cap.*, 2022 Bankr. LEXIS 3462, at *6 ("When considering [this] factor, the Court must consider both whether prejudice will result if the case were remanded to state court or whether prejudice will result if the Court retained jurisdiction.").

56.     In sum, virtually all out of fourteen of the permissive abstention factors cited by Judge Isgur in *Houston Regional Sports Network* weigh in favor of abstention here.  Moreover, the presence of complicated state statutory and contract law issues, a pending state court action which already is involved with adjudicating those issues, and the obvious forum shopping by the Plaintiffs seeking to circumvent adverse rulings by the New York Court, should be and are enough for this Court to exercise its discretion to abstain from this matter.

## IV.   Alternatively, the Declaratory Judgment Claim Should Be Transferred to the Southern District of New York.

### A.     Transfer Is Warranted Under 28 U.S.C. § 1404.

57.     Section 1404(a)—entitled "Change of venue"—provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  28 U.S.C. § 1404(a).

58.     As a threshold matter, all relevant claims here "might have been brought" in the Southern District of New York because that court has subject matter jurisdiction under 28 U.S.C. § 1334(b) ("the district courts shall have original but not exclusive jurisdiction of all civil proceedings . . . related to cases under title 11.").  Moreover, all parties have consented to the propriety of that venue pursuant to the forum-selection clause in the Credit Agreement.  *See Atl. Marine*, 571 U.S. at 62–63 (Section 1404(a) "permits transfer to any district where venue is also proper . . . or to any other district to which the parties have agreed by contract or stipulation.");

*Harland Clarke Holdings Corp. v. Milken*, 997 F. Supp. 2d 561, 573 (W.D. Tex. 2014) ("The Court need not decide whether the District of Delaware is a district in which this lawsuit 'might have been brought' because . . . all parties have consented to venue in Delaware.").

59.     "In the typical case not involving a forum-selection clause, a district court considering a § 1404(a) motion . . . must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine*, 571 U.S. at 62–63.   Ordinarily, the district court would weigh the relevant factors and decide whether, on balance, a transfer would serve 'the convenience of parties and witnesses' and otherwise promote 'the interest of justice.'" *Id.* (citation omitted).

60.     The Supreme Court has held, however, that "[t]he calculus changes . . . when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Id.* at 63; *Doe v. Facebook, Inc.*, No. 22-0226, 2023 WL 3483891, at *3 (S.D. Tex. May 16, 2023) (same).   "The enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Atl. Marine*, 571 U.S. at 63 (citation omitted).   For that reason, the Supreme Court explained, "and because the overarching consideration under § 1404(a) is whether a transfer would promote 'the interest of justice,' '**a valid forum-selection clause should be given controlling weight in all but the most exceptional cases**.'" *Id.* (emphasis added; internal citations and alterations omitted).   Furthermore, "**the plaintiff's choice of forum merits no weight**.   Rather, as the party defying the forum-selection clause, the plaintiff bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted." *Id.* (emphasis added); *see also Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 767 (5th Cir. 2016) (same); *Gedara v. Snap Advances*, LLC, No. 20-2356, 2020 WL 4569845, at *2 (S.D. Tex. Aug. 7, 2020) ("If no such

extraordinary circumstances exist, the Court should grant the motion to transfer in accordance with the forum-selection clause.").

61.     The Supreme Court's *Atlantic Marine* decision further instructs that "a court evaluating a defendant's § 1404(a) motion to transfer based on a forum-selection clause should not consider arguments about the parties' private interests," including whether "the preselected forum [is] inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atl. Marine*, 571 U.S. at 64.  Consequently, "a district court may consider arguments about public-interest factors only. . . . **Because those factors will rarely defeat a transfer motion, the practical result is that forum-selection clauses should control except in unusual cases**." *Id.* (emphasis added).

62.     The Credit Agreement's forum-selection clause, as described above, is clearly mandatory and enforceable because it "affirmatively requires that litigation arising from the contract be carried out in a given forum."  *Weber*, 811 F.3d at 768, 774 ("This court, in keeping with Supreme Court precedents, applies a strong presumption in favor of the enforcement of mandatory" forum-selection clauses).  As such, it must be given "controlling weight." *Atl. Marine*, 571 U.S. at 63.  The Plaintiffs in this Adversary Proceeding, who have chosen to "flout[] [their] contractual obligation and file[] suit in a different forum," must therefore "bear the burden of showing that public-interest factors *overwhelmingly* disfavor a transfer."  *See id.* at 64–67 (emphasis added).

63.     One Rock bears the same burden because, even though it was not a party to the Credit Agreement as amended by Amendment No. 4 (and tortiously interfered with it), it *did* submit to the forum-selection clause pursuant to Amendment No. 5—which also incorporates by reference the forum-selection clause in Section 9.10(b) of the Credit Agreement—and attempted to reap the

benefits of, among other things, the indemnification provision of the Credit Agreement.[13]   One Rock is therefore estopped from disavowing the forum-selection clause.  *See Harland Clarke Holdings Corp. v. Milken*, 997 F. Supp. 2d 561, 583 (W.D. Tex. 2014) (concluding that direct benefits estoppel is triggered because the agreement "expressly benefits [the non-signatory] insofar as it contains indemnification provisions in favor of [the non-signatory] identical to those of [a signatory]."). Moreover, even if One Rock were not contractually subject to it, a non-signatory to a forum-selection clause may be bound by it where it is "closely related" to the dispute "such that it becomes 'foreseeable' that it will be bound." *See Franlink, Inc. v. BACE Servs., Inc.*, 50 F.4th 432, 441 (5th Cir. 2022) (citation omitted). One Rock is "closely related" to the dispute because (i) it owns Robertshaw, (ii) it has attempted to obtain "direct benefits" from the contract at issue, (iii) it knew of the Credit Agreement, and (iv) it was aware of the forum-selection clause." *Id.* at 442. One Rock is therefore bound by the forum-selection clause as a matter of law.

64.     The "public-interest factors" that Court must consider are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law. *In re Directory Distrib. Assocs., Inc.*, 566 B.R. 869, 885 (Bankr. S.D. Tex. 2017) (citing *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 314 (5th Cir. 2008)).

65.     The Plaintiffs cannot show that the foregoing factors disfavor a transfer to the Southern District of New York, let alone "overwhelmingly" so. *Atl. Marine*, 571 U.S. at 67. *First*, as explained above, the relevant claims are governed by New York law, with which the Southern District of New York is more familiar than this Court. *See In re TikTok, Inc.*, 85 F.4th 352, 365

---

[13]   *See* Credit Agreement § 9.03(b).

(5th Cir. 2023) ("This factor most 'commonly applies where the destination venue is in a different State—in which case that State's familiarity with the applicable law would be especially probative to the transfer analysis.'"); *Sabal Ltd. LP v. Deutsche Bank AG*, 209 F. Supp. 3d 907, 925 (W.D. Tex. 2016) ("[There is no doubt that the Southern District of New York applies New York law more frequently than this Court does.  Just as this Court is more familiar with the nuances of Texas contract law and its rules of interpretation, the Southern District of New York is more familiar with the application of New York law."); *Nucurrent, Inc. v. Samsung Elec. Am., Inc.*, No. 6:18-CV-51, 2018 WL 7821099, at *11 (E.D. Tex. Dec. 26, 2018) (holding that "because the Southern District of New York will likely be more familiar with New York law, this factor favors transfer.").

66.     *Second*, there is no "local interest" in having the claims decided in this Court.  All of the Debtors are Delaware entities whose principal place of business is Illinois.[14]  Moreover, "the place of the alleged wrong is one of the most important factors in venue determinations."  *TikTok*, 85 F.4th at 364.  In declaratory judgment actions involving a contract, the locus is "where the contract was to be performed and the alleged breach occurred."  *Chesapeake Operating, Inc. v. Stratco Operating Co.*, No. A-06-CA-991-LY, 2007 WL 788166, at *3 (W.D. Tex. Mar. 14, 2007); *see also Exxon Mobil Corp. v. Turner Indus. Grp., LLC*, No. 5:07CV93, 2007 WL 9706649, at *5 (E.D. Tex. Dec. 20, 2007) (same).  Here, obligations owed to Invesco under the Credit Agreement were to be performed where Invesco is domiciled: New York.  Furthermore, most of the professionals who orchestrated the Sham Transaction are located in New York and *none of the*

---

[14]     *See Voluntary Petition for Non-Individuals Filing for Bankruptcy* [Dkt. No. 1], Action by Written Consent (Feb. 14, 2024) ("Range Parent, Inc., a Delaware corporation," "Robertshaw US Holding Corp., a Delaware corporation," "Robertshaw Controls Company, a Delaware corporation," "Burner Systems International, Inc., a Delaware corporation," "Robertshaw Mexican Holdings LLC, a Delaware limited liability company," "Controles Temex Holdings LLC, a Delaware limited liability company," "Universal Tubular Systems, LLC, a Delaware limited liability company," "Robertshaw Europe Holdings LLC, a Delaware limited liability company").

*alleged wrongs occurred in Texas*.  "[T]his factor weighs heavily in favor of transfer" where, as here, "there is no relevant factual connection" to the transferor court.  *See TikTok*, 85 F.4th at 364.

67.     *Third*, there is no reason to believe that venue transfer would cause "administrative difficulties flowing from court congestion."  *Directory Distrib. Assocs.*, 566 B.R. at 885.  Nor are there any conflict-of-law issues because, as explained above, all the relevant claims are governed by New York law.

68.     The fact that the Debtors' Chapter 11 cases are pending in this Court does not change the conclusion.  *See In re Manchester, Inc.*, 417 B.R. 377, 385 (Bankr. N.D. Tex. 2009) ("With respect to 'non-core' matters, forum selection clauses are enforceable to the same extent that they are enforceable outside of bankruptcy."); *see also Phelan v. Am. Inst. of Toxicology, Inc.*, No. 8:17-CV-1691-T-17TGW, 2017 WL 4443724, at *3 (M.D. Fla. Oct. 4, 2017) (explaining that "forum selection clauses are enforceable in insolvency proceedings").

69.     *ICICI Bank, Ltd. v. Essar Global Fund Ltd.*, 565 B.R. 241 (S.D.N.Y. 2017), is instructive on this issue.  There, the court rejected a debtor's argument that "*Atlantic Marine* is inapplicable to a bankruptcy removal case."  *Id.* at 254.  The court enforced a forum-selection clause that bound the parties to the Southern District of New York and held that the proceeding should not be adjudicated in the District of Delaware, where that party's Chapter 11 case was pending.  *Id.* at 253–56.  The court reasoned that "[t]here simply are no such direct conflicts between the claims asserted here and the ESML bankruptcy.  Instead, there is a remote relationship that, while sufficient to support 'related-to' jurisdiction, is insufficient to overcome the forum-selection clauses."  *Id.* at 254.  Here too, as explained above, *all* the claims are non-core and there is no conflict or tension between their adjudication in New York and these Chapter 11 cases.  The Court must enforce the forum-selection clause for this additional reason.

31

**B.      Transfer Is Also Warranted Under 28 U.S.C. § 1412.**

70.      28 U.S.C. § 1412—also entitled "Change of venue"—provides that "[a] district court may transfer a case or proceeding under title 11 to a district court for another district, in the interest of justice or for the convenience of the parties."[15]  28 U.S.C. § 1412.

71.      The principles enunciated by the Supreme Court in *Atlantic Marine* apply in equal force to Section 1412 as Section 1404.  *Glass v. Miller & Martin PLLC (In re Hutcheson Med. Ctr., Inc.)*, No. 14-42863, 2017 WL 4536076, at *5 (Bankr. N.D. Ga. Oct. 10, 2017) ("Because the Supreme Court's ruling in *Atlantic Marine* . . . governs determination of the issue here regardless of whether § 1404(a) or § 1412 applies, the Court need not choose which view is the better one.").  As such, the burden is on Plaintiffs to show that the forum selection clause is unenforceable, and the parties' private interests are irrelevant.  *See Atl. Marine*, 571 U.S. at 63–64.

72.      The public-interest considerations militating in favor of granting the Motion under Section 1404 also apply to the Section 1412 analysis.  Thus, judicial efficiency mandates that the claims here, which are all governed by New York law, will be heard by a New York court.  *See Lehman Bros. Holdings Inc. v. Lendingtree, LLC*, No. 20-1351, 2021 WL 1087695, at *11 (D. Minn. March 22, 2021) (granting motion to transfer under Section 1412, reasoning that "the Court does not find that it possesses particular familiarity or expertise such that venue in Minnesota would promote judicial efficiency.").  Nor does this District have any interest in "having local controversies decided within its borders" because none of the claims here have any connection to

---

[15]      Because, as explained, the claims here do not arise "under title 11," Section 1412 appears to be inapplicable.  *See Longhorn Partners Pipeline L.P. v. KM Liquids Terminals, L.L.C.*, 408 B.R. 90, 97 (Bankr. S.D. Tex. 2009) ("Section 1412's application is limited to core matters.").  Other courts in this District, however, have held that Section 1412 applies both to core and non-core proceedings.  *See Directory Distrib. Assocs.*, 566 B.R. at 877 (holding that "§ 1412 applies to requests for transfer of core and non-core (related to) bankruptcy proceedings").  In any event, courts apply the same factors in analyzing transfers under both provisions and "choosing one transfer provision over the other generally has no effect on the ultimate transfer decision."  *Id.* at 878; *see also ICICI Bank*, 565 B.R. at 257 (holding that "the distinction between § 1404(a) and § 1412 is largely inconsequential, because the analysis under both statutes is substantially the same.") (internal citation and alterations omitted).

Texas. *See In re Directory Distrib. Assocs.*, 566 B.R. at 881 (reasoning that a "[l]ocal interest . . . arises when a district is home to a party because the suit may call into question the reputation of individuals that work in the community.") (citation omitted).

73.     Furthermore, because the claims are all non-core and "the connection between this case and the . . . bankruptcy is relatively thin," any presumption in favor of the bankruptcy court is trumped by "the strong presumption in favor of the enforcement of a valid forum-selection clause." *See ICICI Bank*, 565 B.R. at 257; *see also Longhorn Partners Pipeline L.P.*, 408 B.R. at 102 (the factors that give rise to the ['home court'] presumption for core matters are not implicated by non-core matters that are merely "related to" the bankruptcy case."); *In re Cont'l Air Lines, Inc.*, 61 B.R. 758, 770 n.25 (S.D. Tex. 1986) (noting that the "home court" presumption is based on the idea that "administrative matters," or core matters, are "properly handled in a single, centralized forum," but the same principle does not apply to "truly civil litigation in the historic sense," or non-core matters).

74.     In light of the foregoing, the Court should transfer the Adversary Proceeding to the Southern District of New York.

## V.    Invesco Does Not Consent to Final Adjudication of Non-Core Claims.

75.     Because Plaintiffs' and Invesco's claims are all non-core, the Court lacks jurisdiction to enter a final order with respect to those claims unless all parties to the proceeding consent to such jurisdiction. 28 U.S.C. § 157(c); *see In re BP RE, L.P.*, 735 F.3d 279, 282 (5th Cir. 2013) (noting that bankruptcy courts may only enter final judgments in non-core proceedings "[w]ith consent of the parties"); *In re Castex Energy Partners, LP*, 584 B.R. 150, 157 (Bankr. S.D. Tex. 2018) ("When an adversary proceeding includes a non-core matter, the bankruptcy court may not adjudicate the non-core matter without the consent of the parties."). Invesco respectfully submits that it does not consent to this Court's final adjudication of the claims herein.

## EMERGENCY CONSIDERATION

76.     Invesco respectfully requests emergency consideration of this Motion pursuant to Bankruptcy Local Rule 9013-1(i).  Emergency relief is warranted under the circumstances because of the truncated schedule with which the Plaintiffs seek to adjudicate this Adversary Proceeding. Accordingly, Invesco respectfully requests that the Court approve the relief requested in this Motion on an emergency basis.

## NOTICE

77.     Notice of this Motion will be given to: (i) counsel to the Debtors; (ii) the Office of the United States Trustee for the Southern District of Texas; (iii) the Official Committee of Unsecured Creditors; (iv) counsel to the Ad Hoc Group; (v) counsel to One Rock; and (vi) all parties that have requested or that are required to receive notice pursuant to Bankruptcy Rule 2002. Invesco submits that, under the circumstances, no other or further notice is required.

*[Remainder of Page Intentionally Left Blank]*

Dated: March 18, 2024

**GLENN AGRE BERGMAN & FUENTES LLP**

Andrew K. Glenn (admitted *pro hac vice*)
Kurt A. Mayr (admitted *pro hac vice*)
Reid Skibell (admitted *pro hac vice*)
Shai Schmidt (admitted *pro hac vice*)
Agustina G. Berro (admitted *pro hac vice*)
1185 Avenue of the Americas
New York, New York 10036
Telephone:  (212) 970-1601
Email:      aglenn@glennagre.com
            kmayr@glennagre.com
            rskibell@glennagre.com
            sschmidt@glennagre.com
            aberro@glennagre.com

-and-

**HOLLAND & KNIGHT, LLP**

By: */s/ Mark C. Taylor*
Mark C. Taylor
Texas Bar No. 19713225
Morris D. Weiss
Texas Bar No. 21110850
William R. "Trip" Nix
Texas Bar No. 24092902
100 Congress Ave., Suite 1800
Austin, Texas 78701
Telephone:  (512) 685-6400
Facsimile:  (512) 685-6417
Email:      mark.taylor@hklaw.com
            morris.weiss@hklaw.com
            trip.nix@hklaw.com

*Counsel to Defendants and Counterclaim Plaintiffs*

**<u>Certificate of Accuracy</u>**

I certify that the foregoing statements are true and accurate to the best of my knowledge. This statement is being made pursuant to Bankruptcy Local Rule 9013-1(i).

By: <u>*/s/ Andrew K. Glenn*</u>

**<u>Certificate of Service</u>**

I certify that, on March 18, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas.

By: <u>*/s/ Andrew K. Glenn*</u>