**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

|  |  |  |
|---|---|---|
| In re: | : | Chapter 11 |
|  | : |  |
| ROBERTSHAW US HOLDING CORP., *et al.*, | : | Case No. 24-90052 (CML) |
|  | : |  |
| Debtors.[1] | : | (Jointly Administered) |
|  | : |  |
|  | : |  |
|  | : |  |
| ROBERTSHAW US HOLDING CORP., *et al.*, | : | Adversary Proc. No. 24-03024 (CML) |
|  | : |  |
| Plaintiffs, | : |  |
|  | : |  |
| v. | : |  |
|  | : |  |
| INVESCO SENIOR SECURED | : |  |
| MANAGEMENT INC., *et al.*, | : |  |
|  | : |  |
| Defendants | : |  |
|  | : |  |

**DEBTOR ROBERTSHAW US HOLDING CORP.'S OPPOSITION TO
DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' EMERGENCY
MOTION TO ABSTAIN OR, IN THE ALTERNATIVE, TRANSFER VENUE**

---

[1]   The debtors in these cases, along with the last four digits of each debtor's federal tax identification number, are as follows:  Range Parent, Inc. (7956); Robertshaw US Holding Corp. (1898); Robertshaw Controls Company (9531); Burner Systems International, Inc. (8603); Robertshaw Mexican Holdings LLC (9531); Controles Temex Holdings LLC (9531); Universal Tubular Systems, LLC (8603); and Robertshaw Europe Holdings LLC (8843).  The primary mailing address used for each of the foregoing debtors is 1222 Hamilton Parkway, Itasca, Illinois 60143.

Debtor Robertshaw US Holding Corp. (together with the above-captioned debtors and debtors in possession, the "Debtors" or "Robertshaw") files this opposition to Invesco's Emergency Motion To Abstain Or, In The Alternative, Transfer Venue (Dkt. 55 (the "Abstention Motion" or "Motion")).[2]

### PRELIMINARY STATEMENT

1.      Invesco's "emergency" Abstention Motion, filed more than a month after the Debtors initiated these bankruptcy proceedings (and on the same day that briefing on the Debtors' Stay Motion was complete), is yet another baseless attempt by Invesco to derail these proceedings. Just as Invesco had no basis to oppose application of the automatic stay to the New York Action, it likewise has no basis for its request that this Court abstain from resolving the Adversary Proceeding.

2.      Even before reaching the legal standards for mandatory or permissive abstention, there is a fundamental and pragmatic problem with Invesco's Abstention Motion—abstention would paralyze the Debtors' restructuring efforts. As Invesco concedes, in order for the Debtors to complete their restructuring, they require a final determination as to the validity of Amendment No. 5 to the Super-Priority Credit Agreement and the identity of the "Required Lenders" thereunder. As Invesco also concedes, these are the precise issues that the Plaintiffs and Invesco have now teed up for final resolution in the Adversary Proceeding. Rather than have this Court resolve these gating issues on the agreed-upon trial schedule here—and even though the parties have already expended significant time, energy, and resources litigating under that schedule— Invesco now demands that the Court call the whole thing off, so that the parties can litigate these

---

[2]      All capitalized terms not defined herein shall have the meaning ascribed to them in the Abstention Motion. References to "Dkt." are to filings in this Adversary Proceeding, and references to "Bankr. Dkt." are to filings in the above-captioned chapter 11 cases.

issues in the New York Action.  The problem for Invesco is that the Debtors and Non-Debtor Parties cannot get the final judgment they need for their restructuring in the New York Action, even if this Court were to abstain from hearing the Adversary Proceeding.

3.      That is because—even assuming this Court abstains—the automatic stay will still remain in place, barring Invesco from pursuing its claims before the New York Court.  By orders dated March 20, 2024, the New York Court has already "disposed" of the New York Action, noting that the parties may only "seek to restore the action if and when automatic stay is no longer in effect." (Ex. 1, March 20, 2024 Order.)  And, by order dated April 11, 2024, this Court held that the New York Action shall be stayed in its entirety until July 15, 2024.  (Dkt. 126.)  Invesco has not moved for reconsideration of either order, or sought to lift or otherwise terminate the stay as to the Debtors.  More than that, Invesco already has conceded that it has no basis to seek relief from the automatic stay, at least as far as the Debtors are concerned.  As Invesco represented to this Court:  "Invesco will not seek any relief against the Debtors in the New York Action."  (Dkt. 31 at 4.)  The practical result of all this is that the only court in which the Debtors can obtain the final judgment they need to complete their restructuring is this one, which is why the Abstention Motion should be rejected out-of-hand.

4.      Beyond this practical concern, Invesco's request that the Court abstain also fails on the merits.  With regard to mandatory abstention, Invesco has failed to satisfy any of the required elements under 28 U.S.C. § 1334(c)(2).  Invesco cannot even make the threshold showing that its Abstention Motion was "timely" filed.  Though styled as seeking "emergency" relief, Invesco filed the instant Abstention Motion more than a month after the Debtors commenced these bankruptcy proceedings—and after Invesco actively participated in every aspect of these proceedings.  The record shows that this delay was, at least in part, strategic.  Rather than include its abstention

arguments as part of its objection to the Stay Motion, Invesco waited until March 18, 2024, the date that the Stay Motion was fully briefed, before raising abstention for the first time. By the time this Motion is actually heard, the parties will be just three weeks away from trial.

5.      In addition to being untimely, Invesco also fails to satisfy any of the substantive elements required for mandatory abstention:  there is an independent basis for jurisdiction in this Court under 28 U.S.C. § 1334(e)(1); the claims Invesco is attempting to pursue in the New York Action are all "core" proceedings under 28 U.S.C. § 157(b)(2), as they are "matters concerning the administration of the estate" under section 157(b)(2)(A), seek "determinations" on the "extent, validity, and priority of liens" on the Debtors' assets under section 157(b)(2)(K), and will necessarily affect "adjustments" to "debtor-creditor relationships" under section 157(b)(2)(O); there is no pending action in the New York Court in deference to which this Court can abstain; and Invesco has not, because it cannot, make a showing that the Adversary Proceeding could be adjudicated timely in the New York Court.

6.      Invesco likewise has made no showing that permissive abstention under 28 U.S.C. § 1334(c)(1) is appropriate.  On this front, Invesco does little more than enumerate the various factors that courts look to when deciding whether to abstain, and—without a single cite to any legitimate evidence—insist that (some of) these factors weigh in favor of abstention.  In truth, nearly all of the relevant factors weigh in favor of this Court presiding over the "core" bankruptcy claims at issue in the Adversary Proceeding.  Most significantly, given that Invesco cannot pursue claims in the New York Action without violating the automatic stay, abstention would plainly frustrate the efficient administration of the Debtors' estate.

7.      Lastly, Invesco also argues, as an alternative to abstention, that the Court should transfer the Adversary Proceeding out of this Court (where the bankruptcy proceeding that hinges

on its resolution is pending) to the Southern District of New York (which has no connection to the bankruptcy or the underlying dispute) in the "interests of justice" under 28 U.S.C. §§ 1404 and 1412.  The Court should decline.

## **BACKGROUND**

8.      On December 20, 2023, Invesco filed a complaint against Robertshaw and the Non-Debtor Parties in the New York Court (the "New York Action") challenging the validity of Amendment No. 5 to the SPCA.  Invesco's complaint asserted seven causes of action:  (1) breach of contract against Robertshaw and the Lender Plaintiffs; (2) breach of the implied covenant of good faith and fair dealing against Robertshaw and the Lender Plaintiffs; (3) a request for a declaratory judgment against Robertshaw and the Lender Plaintiffs that Amendment No. 5 to the SPCA is "void"; (4) tortious interference against One Rock, seeking money damages; and (5-7) three counts of intentional and constructive fraudulent transfer against the Lender Plaintiffs and One Rock.

9.      Among other relief, Invesco requested that the New York Court "direct the Company [Robertshaw] to consummate the restructuring transaction negotiated with Invesco and memorialized in Amendment No. 4" and declare "that Amendment No. 5 is not valid and enforceable, and is thus void."  (Dkt. 59-1 (Invesco N.Y. Compl.) ¶¶ 10, 74.)  On December 21, 2023, Invesco filed a motion seeking a temporary restraining order and preliminary injunctive relief enjoining the implementation of Amendment No. 5.  (Ex. 2, Invesco's Preliminary Injunction Motion.)  The New York Court scheduled an initial hearing on Invesco's request for a temporary restraining order for the next day, December 22, 2023.

10.     In an effort to obviate the need for a hearing, Invesco, Robertshaw, and the Non-Debtor Parties negotiated the terms of a Standstill Stipulation before the hearing began.  (Ex. 3, Dec. 22 Email.)  All substantive terms of the Standstill Stipulation were agreed upon by the parties

in advance of the hearing, but given the short time between the filing of Invesco's motion and the hearing, certain of the Non-Debtor Parties were not able to obtain final client consents before the hearing commenced.  (*Id.*)  This is undisputed.  (Ex. 13, Hr'g Tr. 49:22-25 ("There's absolutely no doubt that those emails [regarding the agreed-upon Standstill Stipulation] were exchanged before that very interesting hearing . . . .").)  It is also undisputed that the New York Court made no rulings during the TRO hearing.  Within an hour following the hearing, the parties finalized and executed the Standstill Stipulation, which was entered by the New York Court on December 22, 2023.  (*Id.*)  Under the Standstill Stipulation, Robertshaw and the Non-Debtor Parties agreed not to, among other things, "engage in or make . . . any transactions, arrangements, amendments, variations, adjustments, waivers, compromises, or settlements" under or pursuant to the SPCA and related loan documents that would require the consent or approval of the Required Lenders thereunder.  (Ex. 4 ¶ 2.)  On January 31, 2024, the parties extended the Standstill Stipulation through the earlier of (i) March 13, 2024, and (ii) entry of an order regarding the pending preliminary injunction motion.  (Ex. 5, Jan. 31, 2024, Standstill Stipulation.)

11.     On January 31, 2024, the parties agreed to a schedule for discovery and briefing on Invesco's application for a preliminary injunction.  (*Id.*)  Pursuant to that agreement, Invesco and Robertshaw served document requests and exchanged initial document productions, and Robertshaw and the Non-Debtor Parties deposed two Invesco witnesses for the limited purpose of responding to Invesco's preliminary injunction motion.  A hearing on the preliminary injunction motion was scheduled for February 28, 2024.

12.     On February 15, 2024 (the "Petition Date"), the Debtors filed for chapter 11 protection before this Court.  Recognizing the need for a value maximizing restructuring transaction, the Debtors simultaneously filed a DIP motion as well as a motion authorizing the sale

of substantially all of the Debtors' assets and proposing bidding procedures in connection therewith.  (Bankr. Dkts. 23, 34.)   The bidding procedures motion sought entry of an order establishing the procedures for a competitive marketing, auction, and sale process that the Debtors believe will yield the greatest possible returns for their stakeholders.  (*Id*.)

13.    Before the Debtors can sell all or substantially all of their assets, however, the Debtors need a final determination as to the identity of the "Required Lenders" under the SPCA, because the answer to that question will determine which lenders can direct the Administrative Agent to "credit bid" for the Debtors' assets.  To obtain that final determination, the Plaintiffs commenced the Adversary Proceeding by filing their Adversary Complaint on the Petition Date. (*See* Dkt. 1.)  The Complaint seeks an order declaring that: (a) the December 2023 Transactions did not breach the SPCA; (b) Robertshaw and the Lender Plaintiffs did not breach the implied covenant of good faith and fair dealing through the December 2023 Transactions; (c) One Rock did not tortiously interfere with the SPCA; (d) Amendment No. 5 and the SPCA as amended by Amendment No. 5 are valid and enforceable contracts; (e) no Event of Default has occurred under the SPCA; and (f) no payments made by or liens or contractual rights given by Robertshaw in connection with the December 2023 Transactions constitute fraudulent transfers.  (*Id.*)

14.    Also on the Petition Date, the Debtors filed an *Emergency Motion for Entry of an Order (A) Declaring that Automatic Stay Applies to Claims Asserted Against Non-Debtor Parties in Invesco Action or (B) Extending Automatic Stay and Preliminarily Enjoining Claims Against Non-Debtor Parties in Invesco Action*.  (Dkt. 2 (the "Stay Motion").)  The Stay Motion presented three alternative bases to support the applicability of the automatic stay to Invesco's claims against the Non-Debtor Parties in the New York Action:  *first*, the automatic stay applies because those claims seek to assert control over property of the estate; *second*, an extension of the automatic stay

is appropriate because any judgment against the Non-Debtor Parties will effectively be a judgment against the Debtors; and *third*, an exercise of the Court's equitable powers under Section 105 to stay the New York Action is appropriate. (*Id.*)

15.     On the day the Debtors commenced these chapter 11 cases, they provided notice of the bankruptcy filing to the New York Court.  In response, the New York Court promptly sent a note cancelling a scheduled status call and stating:  "The other parties should please confirm that they agree that the automatic stay applies and that the February 28 oral argument must be adjourned." (Ex. 6, February 15, 2024 Email from M. Rand.)  Invesco did not timely provide the requested confirmation, so on February 21, 2024, the New York Court *sua sponte* entered an order denying Invesco's motion for preliminary injunction without prejudice "[d]ue to the automatic stay." (Ex. 7, February 21, 2024 Order at 1.)  The New York Court further stated that Invesco could "seek[] to restore the motion if and when the automatic stay is no longer in effect." (*Id.*)

16.     Since the Petition Date, Invesco has been an active participant in these chapter 11 cases, attending every hearing before this Court and objecting to a number of substantive motions filed by the Debtors.  Between the Petition Date and the filing of its Abstention Motion, Invesco made no fewer than 35 filings in connection with the main bankruptcy case and the Adversary Proceeding, including:

- An objection to the Debtors' proposed scheduling order governing the Adversary Proceeding, filed on February 20, 2024 (Dkt. 16);

- An objection to the Debtors' DIP Motion and proposed DIP term sheet, filed on March 4, 2024 (Bankr. Dkts. 261, 261-1);

- An objection to the Debtors' Bid Procedures Motion, filed on March 4, 2024 (Bankr. Dkts. 262-269);

- An objection to the Debtors' Stay Motion, filed on March 8, 2024 (Dkts. 29-35);

- A proposed scheduling order governing the Adversary Proceeding, filed on March 11, 2024 (Dkt. 37); and

- An answer to the Debtors' Complaint, as well as counterclaims against the Debtors, filed on March 12, 2024 (Dkts. 43-45).

17.     On March 18, 2024, 33 days after the Debtors commenced these chapter 11 cases and filed their Stay Motion, Invesco filed the present "emergency" Abstention Motion at 10:53 pm EST.  (*See* Mot.; Ex. 12, ECF Notice.)  The Abstention Motion asks this Court to abstain from deciding the issues in the Adversary Proceeding pursuant to 28 U.S.C. § 1334(c), or alternatively to transfer this Adversary Proceeding to the Southern District of New York pursuant to 28 U.S.C. §§ 1404 and 1412.  While Invesco's Abstention Motion is a recent development, the arguments contained therein are not.  For example, the Motion argues that abstention is appropriate because the Debtors filed for bankruptcy protection and initiated the Adversary Proceeding as part of a scheme to "forum shop," (Mot. at 22), an irresponsible accusation that Invesco leveled against the Debtors during the first day hearing (Ex. 11, Hr'g Tr. at 32:20-23).  Invesco subsequently rehashed this allegation in its objection to the Stay Motion, filed on March 8, 2024 (Dkt. 31 at 27-29), and again in its Answer, filed on March 12, 2024 (Dkt. 43 ¶ 102).  Invesco's Abstention Motion also argues that the claims at issue in the Adversary Proceeding are "non-core," (Mot. at 12-15), an argument that Invesco adopted in the Answer it filed on March 12, 2024 (Dkt. No. 43 at 3, 18).  Invesco's Abstention Motion offers no explanation as to why Invesco did not seek abstention earlier in these bankruptcy proceedings.

18.     On March 20, 2024, two days after Invesco filed the Abstention Motion, the New York Court entered an order marking the New York Action "disposed," signifying that the New York Action was over.  The New York Court added that "the parties may seek to restore the action if and when automatic stay is no longer in effect."  (Ex. 1, March 20, 2024 Order.)

## ARGUMENT

**I.  INVESCO'S REQUEST THAT THE COURT ABSTAIN FROM ADJUDICATING THIS DISPUTE WILL IMPEDE THE DEBTORS' RESTRUCTURING.**

19.     As discussed below, Invesco cannot meet its burden for abstention, either mandatory or permissive, and there is no justification to transfer venue.  But the Court need not even reach these issues because, as a practical matter, abstention or transfer of the Adversary Proceeding here are not viable options, as they would preclude the Debtors from obtaining the final judgment needed to complete the Debtors' restructuring.  *See Brown v. Shepherd (In re Lorax Corp.)*, 295 B.R. 83, 91 (Bankr. N.D. Tex. 2003) ("As stated above, Debtor's case cannot proceed until issues presented by the [state court] Suit are resolved. If this court were to cede these issues to a state court, it would effectively be ceding control over Debtor's chapter 11 case. This simply cannot be the result contemplated by Congress in enacting the Code and related statutes.").  As Invesco concedes in its Motion, the Debtors' restructuring hinges upon a determination as to the validity of Amendment No. 5 to the Debtors' SPCA:  "The validity of Amendment No. 5 and whether Invesco is the Required Lenders under the Credit Agreement will have to be adjudicated, *whether or not this Court abstains*, before it can be determined whether the Non-Debtor Plaintiffs may direct the Administrative Agent to submit a credit bid for the Debtors' assets."  (Mot. at 24 (emphasis in original).)  The only court that can currently adjudicate the validity of Amendment No. 5 is this one; the New York Court cannot.

20.     The problem that Invesco apparently has overlooked is the automatic stay.  While Invesco previously opposed the Debtors' Stay Motion with regard to certain claims against the Non-Debtor Parties, Invesco has never moved to lift the stay as to the Debtors.  Nor has Invesco ever disputed that the automatic stay bars the prosecution of any of its claims against the Debtors in the New York Action.  To the contrary, in its opposition to the Debtors' Stay Motion, Invesco

confirmed that it "will not seek any relief against the Debtors in the New York Action." (Dkt. 31 at 4.) In addition, the Court has already separately stayed the New York Action in its entirety until at least July 15, 2024 as part of its ruling on the Debtors' Stay Motion. (Dkt. 126). Invesco has not sought reconsideration of that ruling or otherwise challenged that stay order. Thus, even if this Court abstains, Invesco will still be barred from pursuing any claims against the Debtors—including claims to determine the validity of Amendment No. 5—in the New York Action or any other court. *See In re Petroleum Prod. & Servs., Inc.*, 556 B.R. 296, 302–03 (Bankr. S.D. Tex. 2016) (finding mandatory abstention applies but noting that "[a]lthough the case is remanded, the automatic stay remains in effect. No litigation may proceed against WDI. The Court will consider whether to lift the stay on the filing of a proper motion and response."); *Alexander v. The Travelers Indemn. Co.*, 625 F. Supp.3d 512, 519 (E.D. La. 2022) (recognizing that a reading of 1334(c) that would require that abstention encompass stay relief would require "the Court ignore the plain language of 1334(d) . . . [and concluding] abstention provisions cannot be read to render the automatic stay nugatory.")). Without a final adjudication of the validity of Amendment No. 5, there can be no determination as to the identity of the Debtors' Required Lenders, and without that determination, there can be no restructuring. The Debtors respectfully submit this is reason enough to deny the Abstention Motion.

## II.     INVESCO HAS NO BASIS TO REQUEST MANDATORY ABSTENTION HERE.

21.     Invesco's request for mandatory abstention also fails on its own terms. Mandatory abstention is governed by 28 U.S. § 1334(c)(2), which provides that

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court shall abstain from hearing such proceeding if an

action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

22.     As the statute indicates, the threshold requirement for abstention under section 1334 (c)(2) is that motions seeking abstention be "timely" filed.  Beyond that, "[t]he Fifth Circuit has described a four-part mandatory abstention test:  '(1) [t]he claim has no independent basis, other than § 1334(b); (2) the claim is a non-core proceeding . . .; (3) an action has been commenced in state court; and (4) the action could be adjudicated timely in state court.'"  *Youngman v. Shaper (In re Speedcast Int'l Ltd.)*, No. 20-32243, 2022 WL 4281474, at *3 (Bankr. S.D. Tex. Sept. 15, 2022).  The elements in this test are "conjunctive," meaning "[e]ach must be satisfied" in order for the Court to abstain.  *Id.*  Here, Invesco has not satisfied any of the elements, much less all of them.

**A.     Invesco's Abstention Motion was not timely filed.**

23.     Invesco's Motion fails in the first instance because it was not timely filed.  Invesco suggests that there is no standard as to what constitutes a "timely" motion for purposes of section 1334(c)(2).  (Mot. at 17.)  That is not exactly right.  Even though 28 U.S.C. § 1334(c)(2) does not specifically "define what constitutes a 'timely' motion, courts have found that a party acts in a timely fashion *when he or she moves as soon as possible* after he or she should have learned the grounds for such a motion."  *See First Bank v. Arafat*, No. CIV.A. H-05-4337, 2006 WL 2612746, at *3 (S.D. Tex. Sept. 11, 2006); *Pearl Res. Operating Co., LLC v. Transcon Cap., LLC*, No. 22-3297, 2022 Bankr. LEXIS 3462, at *7 (Bankr. S.D. Tex. Dec. 6, 2022).  Invesco has not even attempted to show that it moved for abstention "as soon as possible" after learning of the grounds for such a motion.  It did not.

24.     Invesco was aware of the grounds for its Abstention Motion from the very outset of these chapter 11 cases.  The Debtors commenced these chapter 11 cases, including the Adversary Proceeding in question, on February 15, 2024.  That very same day, the Debtors also

filed their Stay Motion, seeking an order staying all of the claims Invesco had asserted in the New York Action.  (*See* Dkt. 2.)  In so doing, the Debtors expressly teed up the question that Invesco now seeks to (re)litigate in its Abstention Motion—i.e., whether Invesco's claims challenging the validity of Amendment No. 5 should be resolved in this Court or, instead, in the New York Action. Also on February 15, 2024, the Debtors provided Invesco with written notice of these bankruptcy proceedings.  (Ex. 8, Feb. 15, 2024 Notice of Suggestion of Bankruptcy.)  If Invesco really believed the Court must abstain from hearing the Adversary Proceeding, it should have filed its "emergency" motion at that time or shortly thereafter.

25.    Invesco did not do so.  In the days and weeks that followed the Debtors' bankruptcy filing, Invesco did not ask this Court to abstain from the Adversary Proceeding.  Instead, Invesco did just the opposite—it actively participated in these cases, including, in particular, the Adversary Proceeding where it proposed its own litigation schedule (Dkts. 16, 99), served extensive party and third-party discovery requests (including no less than 12 deposition notices and subpoenas) (Ex. 10), denied the Debtors' allegations and asserted its own counterclaims (Dkt. 45), filed motions to compel (Dkts. 87, 109), and agreed to and did produce documents to Plaintiffs (Ex. 9). Even when it filed its opposition to the Stay Motion on March 8, 2024, Invesco still did not take the position that this Court must "abstain" from hearing the Adversary Proceeding under 28 U.S.C. § 1334(c).  (*See, generally,* Dkt. 31.)  While Invesco argued in its opposition to the Stay Motion that the automatic stay did not cover certain of its "claims against the Non-Debtor Parties," Invesco expressly acknowledged that its claims against the Debtors *were* properly before this Court—going so far as to represent that "Invesco will not seek any relief against the Debtors in the New York Action" where it would "only pursue claims against the Non-Debtor Parties."  (*Id.* at 4.)  Invesco

did not file the instant "emergency" Abstention Motion until March 18, 2024—*33 days* after the Debtors initiated these proceedings.

26.     In its Abstention Motion, Invesco argues that—notwithstanding this delay—the Motion is still timely because it was filed "just weeks after service of the Complaint" and courts have found that motions to abstain were "timely when filed within 30 days." Mot. at 17.  Invesco also seems to suggest that such delay "has not caused any discernible prejudice" because "there has been no litigation and the Court has not yet ruled on any substantive issues." *Id.*  Invesco is wrong on all counts.

27.     First, the mere fact that other courts have found 30-day delays in other contexts to be timely is of no moment.  When it comes to abstention motions, "courts apply a case-by-case approach" to determine whether such motions are "timely"—the most "relevant considerations" being "whether the movant move[d] as soon as possible . . . ." *In re Pearl Res. LLC*, No. 20-31585, 2022 WL 17478531, at *3 (Bankr. S.D. Tex. Dec. 6, 2022).  Under the particular facts of this case, Invesco's 33-day delay before raising abstention here was not timely.  Invesco has known from the outset that time is of the essence in the Adversary Proceeding.  (Dkt.  29 at 3 (acknowledging that the Debtors wanted "expedited" resolution).)  That is because, as Invesco also knows, consummation of the planned Section 363 sale is "subject to the resolution" of the questions presented by this Adversary Proceeding.  (Mot. 15-16.)  Indeed, the trial schedule for the Adversary Proceeding that the Court has now entered—and to which Invesco agreed—allots a total of *98 days* between the commencement of the Adversary Proceeding (February 15) and the first day of trial (May 23).  By waiting 33 days, Invesco allowed *1/3rd of the agreed-upon trial schedule* to elapse before ever raising the concept of abstention to this Court.  As discussed above, a significant amount of time and resources were expended in the interim.

28.     Invesco not only delayed in raising abstention, it has also shown little interest in obtaining a ruling in a timely manner.  Since Invesco filed the Abstention Motion on March 18, the parties have twice postponed the hearing on the Motion—which is currently scheduled to be heard as part of the parties' initial pre-trial conference on April 30, 2024.  By that time, 75 of the 98 pre-trial days will have elapsed—leaving the parties with roughly two weeks before the exchange of witness and exhibit lists and just three weeks before trial itself.  By then, the parties will have spent many millions of dollars preparing to try the claims at issue before this Court— and this Court will have spent a significant amount of time considering and ruling on matters related thereto.  To have the Court abstain from presiding over the trial on the eve of said trial would be a monumental waste of time, energy, and resources for all involved.

29.     Notably, Invesco does not attempt to justify its delay in bringing the Abstention Motion.  Though it blames the "rushed" sale process and "truncated" trial schedule for where things stand, (Mot. at 20, 34), the truth is Invesco had ample opportunity to raise abstention far earlier in these proceedings.  Over the 33 days that elapsed between February 15 and March 18, Invesco filed no less than 35 different pleadings in these proceedings.  As noted, this included substantive objections on February 20 (scheduling), March 4 (DIP and bid procedures), and March 8 (Stay Motion), as well as its 42-page Answer and Counterclaims on March 12.  (Dkts. 16, 29, 45; Bankr. Dkts. 261, 262.)  There is no reason that Invesco could not have, at the very least, raised abstention when it objected to the Stay Motion.  Indeed, Invesco's other filings in this case show that it was actively contemplating filing a "forthcoming" abstention motion before the Stay Motion was fully briefed.[3]   But rather than including such arguments as part of its opposition to the Stay

---

[3] For instance, the proposed trial schedule that Invesco filed on March 11 makes reference to a potential "Motion to Abstain and/or Transfer," the deadline for which Invesco unilaterally proposed should be March 18.  *See* Dkt. 37.  Invesco likewise claims in its March 12 Counterclaims that such Counterclaims are "subject to and without waiver of" a "forthcoming motion to abstain or transfer the proceeding."  Dkt. 43 at 13-14, 18.

Motion, Invesco unilaterally decided to wait until **10:53 pm EST on March 18**—the night that the Debtors' reply brief in support of the Stay Motion was due—to make such arguments in a "new" Abstention Motion.  (Ex. 12, ECF Notice.)  Such strategic delay cannot be "timely."  *See In re AHT Corp.*, 265 B.R. 379, 384 (Bankr. S.D.N.Y. 2001) ("It would make a mockery of the 'timely motion' requirement to permit [a party] to litigate matters of substance on the merits . . . and, after receiving an adverse ruling, seek to transfer the litigation to a different venue."); *First Bank*, 2006 WL 2612746, at *3 (denying motion to abstain made eight months after commencement of the case after the movant had conducted depositions and the court had denied summary judgment).

### B.   There is an independent basis for jurisdiction under Section 1334(e)(1).

30.   Invesco fares no better on any of the four remaining substantive elements for mandatory abstention.  The first of these elements requires Invesco to show that "[t]he claim has no independent basis" for federal jurisdiction "other than § 1334(b)."  *Youngman v. Shaper (In re Speedcast Int'l Ltd.)*, No. 20-32243, 2022 WL 4281474, at *3 (Bankr. S.D. Tex. Sept. 15, 2022).  Here, an independent basis for jurisdiction over the Adversary Proceeding exists under section 1334(e)(1).

31.   Section 1334(e)(1) vests "[t]he district court in which a case under title 11 is commenced [with] . . . exclusive jurisdiction [over] . . . property of the estate."  28 U.S.C. § 1334(e)(1).  As this Court already found in connection with the Stay Motion, the Debtors' rights under the SPCA as of the Petition Date are "property of the estate."  (Ex. 13, Hr'g Tr. at 89:16 – 93:22.)  *See Stewart Title Guar. Co. v. Old Republic Nat'l Title Ins. Co*., 83 F.3d 735, 741-42 (5th Cir. 1996) ("property rights acquired under the contract prior to filing became property of the estate despite the trustee's rejection of unperformed obligations of the contract"); *In re Mirant Corp*., 303 B.R. 319, 328 (Bankr. N.D. Tex. 2003) ("[E]ven if a contract is not property of the estate until assumption, a debtor has rights under the contract which are property of the estate and so are

protected by the automatic stay from actions of other parties."); *see also Ulrich v. Walker (In re Boates)*, 554 B.R. 472, 474 (B.A.P. 9th Cir. 2016) ("Contract rights held by the debtor on the date of his or her petition filing are property of the estate regardless of whether the rights are associated with an executory or non-executory contract."). The adjudication of the claims at issue in the Adversary Proceeding necessarily implicates the nature and extent of the Debtors' property, that is, the Debtors' rights under the SPCA. More specifically, such adjudication will determine whether the Debtors' rights under the SPCA are governed by Amendment No. 4, as Invesco contends, or by Amendment No. 5, as the Debtors contend. As this Court made clear in *Speer v. Tow (In re Royce Homes, LP)*, "[a]ny litigation about the nature and extent of the property of the estate . . . lies within this Court's exclusive jurisdiction under 28 U.S.C. § 1334(e)." 652 B.R. 488 (Bankr. S.D. Tex. 2023) (denying abstention where the claims at issue "necessarily require a determination of the nature and extent of the estate's interest in" an Executed Note and Deed of Trust). Because section 1334(e)(1) provides an independent basis for jurisdiction over the claims asserted in the Adversary Proceeding beyond section 1334(b), the first substantive element required for mandatory abstention is not present.

### C.    The claims in the Adversary Proceeding are all "core" proceedings.

32.    Invesco's mandatory abstention argument also fails because it cannot show that the claims in the Adversary Proceeding are "non-core" under 28 U.S.C. § 157.[4] As a general matter,

---

[4]    Invesco does not even attempt to address § 157(b), much less offer any reason this Court should ignore that under the plain language of §§ 157(b)(2)(A), (K), and (O) these claims are "core." This alone is fatal to Invesco's argument. *BedRoc Ltd., LLC v. U.S.*, 541 U.S. 176, 183 (2004) ("The preeminent canon of statutory interpretation requires [this Court] to presume that the legislature says in a statute what it means and means in a statute what it says there . . . [Thus,] a court's inquiry begins with the statutory text, and ends there as well if the text is unambiguous."). Nor does the Supreme Court's decision in *Stern*—which expressly instructed that its holding applied only "in one isolated respect"—change this reality. *Stern v. Marshall*, 564 U.S. 462, 503 (2011). The Fifth Circuit has repeatedly rejected arguments that *Stern's* holding should be expanded beyond 157(b)(2)(C). *See Faulkner v. Kornman*, No. 10-301, 2015 WL 1061736, at *1-2 (Bankr. S.D. Tex. March 15, 2015) (charting Fifth Circuit's rejection of requested *Stern* expansions).

"a proceeding is core under section 157 if it invokes a substantive right provided by title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case." *In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999). Section 157(b)(2) of the Bankruptcy Code, in turn, sets forth a non-exhaustive list of "core" proceedings. 28 U.S.C. § 157(b)(2). A claim only needs to fall into one of the categories set forth in section 157(b)(2) to be considered "core." As the Court already explained in detail in its ruling on the Stay Motion and found as part of its ruling on the trial schedule (Ex. 13; Dkt. No. 123), the claims in the Adversary Proceeding easily qualify as "core" under various provision of Section 157(b)(2), including "(A) matters concerning the administration of the estate;" "(K) determinations of the validity, extent, or priority of liens;" and "(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship" and others. *See* 28 U.S.C. § 157(b)(2)(A), (K), (O).

33. The Court's findings were correct. First and foremost, the resolution of the Adversary Proceeding will impact the administration of the Debtors' estates. More specifically, the Adversary Proceeding will determine whether Amendment No. 5 is valid and, relatedly, who the "Required Lenders" are under the SPCA. Invesco, for its part, maintains that Amendment No. 5 was "void *ab initio*" and that, despite the fact that the official loan Register maintained by the Administrative Agent reflects that the Ad Hoc Group constitutes "Required Lenders," Invesco still somehow retains "all rights of Required Lenders" under the SPCA. (Dkt. 43 at 29, 39.) As stated, these issues must be resolved as a prerequisite to the "administration of the estate." 28 U.S.C. § 157(b)(2)(A). On March 21, 2024, the Court approved bid procedures for a contemplated Section 363 sale. (Bankr. Dkt. 359.) The sales process authorized by the Court's order approving the bid procedures—which is currently well underway—will culminate in a sale that the Debtors intend

to seek approval of at the conclusion of the Adversary Proceeding.  But that sale cannot close without a determination of the identity of Required Lenders under the SPCA.  As Invesco acknowledges, "[t]he validity of Amendment No. 5 and whether Invesco is the Required Lenders under the Credit Agreement will have to be adjudicated, *whether or not this Court abstains*, before it can be determined whether the Non-Debtor Plaintiffs may direct the Administrative Agent to submit a credit bid for the Debtors' assets."  (Mot at 24 (emphasis in original).)  Clearly, the Adversary Proceeding here involves "matters concerning the administration of the estate" under Section 157(b)(2)(A), as it invokes and implicates central "substantive right[s] provided by title 11"—namely, the rights of the affected Lenders to submit credit bids under Section 363, and the allowance, disallowance, and estimation of their related claims against the estate.  *See In re Spillman Dev. Grp., Ltd*., 710 F.3d 299, 306 (5th Cir. 2013) (recognizing "the right to credit bid is purely a creature of the Bankruptcy Code" and finding contract claim was "core" where it was "inextricably intertwined with the interpretation of a right created by federal bankruptcy law—the interpretation of the effect of [a buyer's] credit bid is in fact determinative of [its] claim").

34.    The resolution of the Adversary Proceeding will also directly impact the "validity and extent of liens" under Section 157(b)(2)(K), as well as potential "adjustment[s]" to "debtor-creditor" relationships under Section 157(b)(2)(O).  The SPCA itself is the most significant secured loan agreement to which the Debtors are a party.  Out of the $833 million in total secured debt that the Debtors owed as of the Petition Date, $725 million—or roughly 87%—is governed by the terms of the SPCA.  (Bankr. Dkt. 19, Decl. John Hewitt ¶ 20.)  If, as Invesco alleges in its Counterclaims, both Amendment No. 5 and the December 2023 Transactions, as a whole, were legally "ineffective" and "void *ab initio*," that will drastically change the Debtors' current portfolio of secured loans and the validity, extent, and existence of any liens relating thereto.  To be sure,

and as Invesco's Counterclaims make clear, when Invesco says that Amendment No. 5 was "ineffective," that means that the incremental First- and Second-Out Term Loans issued under Amendment No. 5 to the SPCA would all be ***"unauthorized, void debt."*** (Dkt. 45 at 29 ¶ 40 ("Amendment No. 5 is therefore ineffective, and ***the Sham First-Out Term Loan is unauthorized, void debt.***").)

35.     The relief that Invesco ultimately seeks through its claims in the Adversary Proceeding is to "rescind" Amendment No. 5 and the December 2023 Transactions and to "reinstate" Amendment No. 4. (Dkt. No. 59-1.) To grant such relief would be to fundamentally alter the current state of the Debtors' entire capital structure:

- $218 million in incremental First-Out Term Loans issued in the December 2023 Transactions, and the liens securing them, would be rendered "void";

- $10 million in incremental Second-Out Term Loans issued in the December 2023 Transactions, and the liens securing them, would be rendered "void";

- $117 million in prior First-Out Loans that were paid off on December 10, 2023, would need to be returned to the Debtors, and such Loans, and the liens securing them, would have to be reinstated;

- $30 million in secured revolving debt under the Debtors' prior ABL Facility—which they paid off using the proceeds from the December 2023 Transactions—and the liens securing such debt, would have to be reinstated; and

- $56 million issued as a result of the DIP financing, and the liens securing them, may be subject to challenge, as Invesco repeatedly threatened at the DIP hearing.

36.     These are "primarily core matters" from which the Court should not abstain. *In re Pearl Res. LLC*, 645 B.R. 530, 543 (Bankr. S.D. Tex. 2022) ("Plaintiffs' claims are core pursuant to 28 U.S.C. § 157(b)(2)(A), (B), and (K) because this adversary proceeding involves primarily core matters as it concerns administration of the estate, allowance or disallowance of claims against the estate, and determinations of the validity, extent, or priority of liens.").

37.     This Court's decision in *In re Royce Homes, LP* confirms that Invesco's claims in the Adversary Proceeding are core.  In that case, a former principal of the Chapter 7 debtor and one of his controlled companies (collectively, "plaintiffs") brought an action in Texas state court seeking to void a promissory note and deed of trust that they had previously executed in favor of the debtor.  The Chapter 7 trustee removed the state court action to this Bankruptcy Court, and plaintiffs responded by asking this Court to abstain.  Just like Invesco in this case, the plaintiffs in *In re Royce Homes, LP* sought "to frame their lawsuit as a pure contract dispute for which this Court only has 'related to' jurisdiction."  652 B.R. at 495.  This Court summarily rejected plaintiffs' contention:  "The lawsuit questions the validity and enforceability of the Executed Note and the Deed of Trust; and whether it ever became part of the Debtor's estate.  Proceedings to determine whether something is estate property or somehow stopped being estate property is a core proceeding under Section 157(b)(2)(A)."  *Id.*; *see also In re Longhorn Paving & Oilfield Servs., Inc.,* 648 B.R. 300, 305 n.25 (Bankr. S.D. Tex. 2023) (claims that are "inextricably . . . tied to questions concerning the proper administration of the estate" are core proceeding); *In re Johnson*, 649 B.R. 735, 752 (Bankr. N.D. Ill. 2023) (action by debtor seeking to declare loan voidable under state law was "constitutionally core").  This case is no different.  And because this is a core proceeding, mandatory abstention is inapplicable.

**D.     There is no action "commenced in state court" that is pending.**

38.     Invesco also cannot show the third substantive element of the mandatory abstention test—the existence of an action "commenced in state court" from which this Court should or even could "abstain."  *In re Speedcast Int'l Ltd.,* 2022 WL 4281474, at *3.  To satisfy this factor, it is not enough that Invesco had "commenced" the New York Action at one point in time; instead, the New York Action must still be ***pending*** at the time the request to abstain is made.  *See In re Equator Corp.*, 2007 WL 3119679, at *4 (Bankr. S.D. Tex. Oct. 22, 2007) (considering whether

there was any "pending state court proceeding"); *E.E.O.C. v. Palafox Hosp., Ltd.*, 188 F. Supp. 2d 680, 682 (S.D. Tex. 2001) ("At issue is whether federal abstention is warranted in light of the *pending* state proceeding.").

39.     The issue for Invesco is that the New York Action is no longer "pending." Upon learning of the Debtors' bankruptcy filing, the New York Court immediately denied Invesco's preliminary injunction motion, which was the only pending motion before that court. (Ex. 7, Feb. 21, 2024 Order ("Due to the automatic stay . . . the motion is denied without prejudice to plaintiff seeking to restore the motion if and when the automatic stay is no longer in effect.").) Thereafter, the New York Court entered a series of orders regarding Invesco's failure to adhere to its sealing rules. In connection with such orders, the New York Court *sua sponte* disposed of the New York Action in full, noting that Invesco may seek leave to "restore the action" but only "***if and when*** the automatic stay is no longer in effect." (Ex. 1, March 20, 2024 Order at 2 ("This action is marked disposed and the parties may seek to restore the action if and when automatic stay is no longer in effect."); NYCourts.gov Legal Terms Glossary (defining "dispose" as "[t]o end a case").) As such, "mandatory abstention does not apply" because "there is no pending state court proceeding" in deference to which this Court can abstain. *In re Equator Corp.*, 2007 WL 3119679, at *4 (emphasis added); *see also In re Denton Cnty. Elec. Co-op., Inc.*, 281 B.R. 876, 881 (Bankr. N.D. Tex. 2002) ("Because there is currently no pending state court action, it is clear that mandatory abstention under 28 U.S.C. § 1334(c)(2) does not apply to Debtor's declaratory judgment suit.").

**E.     Invesco has made no showing that the Adversary Proceeding can be timely adjudicated in the New York Court.**

40.     Finally, "[a] party moving for mandatory abstention must provide the court with more than a 'naked assertion' that the action can be timely adjudicated in state court." *Carriage*

*Credit Corp. v. Flanagan (In re Draper)*, 2010 WL 4736168, at *3 (Bankr. S.D. Tex. Nov. 15, 2010) (quoting *Mugica v. Helena Chem. Co. (In re Mugica)*, 362 B.R. 782, 793 (Bankr. S.D. Tex. 2007)); *see also In re Hallwood Energy, L.P.*, No. 09-03202, 2009 WL 2601294, at *8 (Bankr. S.D. Tex. Aug. 24, 2009) ("[t]he party contending that an action can by timely adjudicated in state court, however, must make more than a mere 'naked assertion' in support thereof").

41.     Here, Invesco has offered no evidence that the Adversary Proceeding can be timely adjudicated in the New York Court, and it cannot do so.  In particular, Invesco offers no evidence whatsoever as to the expected timeline on which the New York Court could be expected to render a final adjudication on the validity of Amendment No. 5.  This failure of proof, alone, is sufficient reason to deny Invesco's Abstention Motion.  *See In re Lorax Corp.*, 295 B.R. at 93 ("A naked assertion that the matter can be timely adjudicated, in state court, without more, is insufficient to satisfy the requirement of mandatory abstention.").  The reason that Invesco fails to offer evidence concerning timely adjudication in the New York Court is that none exists.  Rather, the evidence shows that, in liability management cases similar to the Adversary Proceeding, New York state courts can take a year or more just to resolve a motion to dismiss.  *Audax Credit Opportunities Offshore Ltd. v. TMK Hawk Parent, Corp.*, 150 N.Y.S.3d 894 (N.Y. Sup. Ct. Aug. 16, 2021) (more than nine months between filing of complaint and ruling on motion to dismiss); *ICG Global Loan Fund 1 DAC v. Boardriders, Inc.*, 2022 WL 10085886, at *10 (N.Y. Sup. Oct. 17, 2022) (more than two years between filing of complaint and ruling on motion to dismiss).

42.     The most Invesco can say on the issue of timely adjudication in New York is that "[a] hearing on Invesco's request for a preliminary injunction—which was already scheduled for February 28, 2024 and was only canceled because of Robertshaw's bankruptcy filing—can be rescheduled quickly."  Mot. at 19.  That is a red herring.  In its oral ruling on the Stay Motion, the

Court specifically noted that the record did not make clear that "anyone was winning or anyone was losing" in the New York Action when these bankruptcy proceedings were initiated—and that, even if Invesco's allegations regarding the TRO hearing were true, such a preliminary ruling would still not constitute a final adjudication of the matter and the question of which party would ultimately prevail on the merits would require a "completely different analysis." (Ex. 13, Hr'g Tr. at 59:4-21.)

43.     The Court's ruling was spot on.  A ruling on a preliminary injunction is just that— a preliminary ruling and not a final adjudication on the merits.  *See  J.A. Preston Corp. v. Fabrication Enterprises, Inc.*, 68 N.Y.2d 397, 402 (N.Y. Ct. App. 1986) ("the granting of a [preliminary] injunction serves only to hold the matter [in status] quo until opportunity is afforded to decide upon the merits.  The granting or refusal of a temporary injunction does not constitute the law of the case or an adjudication on the merits, and the issues must be tried to the same extent as though no temporary injunction had been applied"); *Coinmach v. Fordham Hill Owners Corp*., 3 A.D.2d 312, 770 N.Y.S.2d 310, 312 (N.Y. App. Div. 2004) ("It is settled law that the grant or denial of a request for a preliminary injunction, a provisional remedy designed for the narrow purpose of maintaining the status quo, is not an adjudication on the merits and will not be given res judicata effect."); *Owl Homes of Fredonia, Inc. v. Mur*phy, 201 A.D.2d 917, 918 (N.Y. App. Div. 1994) (ruling "on a motion for a temporary injunction is not a final adjudication on the merits"); *35 W. Broadway LLC v. 137 W. Broadway Owners Corp*., 122 N.Y.S.3d 8, 9 (1st Dep't 2020) (an injunction may not grant "the ultimate relief [the moving party] seeks without a trial on the merits of . . . [the] claim").

44.     In order to complete their restructuring, the Debtors need a final adjudication on the merits of the Adversary Proceeding so they can determine who are their Required Lenders.  As

was the case with the Stay Motion, Invesco offers zero evidence that the claims in the Adversary Proceeding could be timely adjudicated in the New York Court, much less evidence that it could be adjudicated on anything approaching the timeline established by this Court.  But it is not just that there is no evidence that the Adversary Proceeding can be timely adjudicated in New York.  As noted, it is clear that the Adversary Proceeding cannot be finally adjudicated at all in the New York Court under the present circumstances.  That is because, even if this Court abstains, the automatic stay will continue to apply to claims asserted against the Debtors in the New York Action and, pursuant to this Court's recent order, the New York Action is stayed at least until July 15, 2024.  (Dkt. 126.)  Invesco has not moved to lift the stay or for reconsideration of the Court's recent order on the Stay Motion.  It has no basis to seek either form of relief.  Thus, Invesco could never satisfy its burden of showing the Adversary Proceeding could be timely adjudicated in the New York Court and, by extension, cannot satisfy its burden on mandatory abstention.

## III.   THERE IS NO BASIS FOR PERMISSIVE ABSTENTION.

45.     In addition to mandatory abstention, Invesco asks that the Court exercise its discretion and permissively abstain from adjudicating the Adversary Proceeding under 28 U.S.C. § 1334(c)(1), which provides that "nothing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect to State law, from abstaining from hearing a particular proceeding under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1); *Houston Baseball Partners v. Comcast Corp. (In re Hou. Reg'l Sports Network, L.P.)*, 514 B.R. 211, 215 (Bankr. S.D. Tex. 2014) ("[a]lthough the Court is not required to abstain under § 1334(c)(2), it may discretionarily decline to hear the proceeding under § 1334(c)(1)").

46.     Courts faced with a request for permissive abstention consider a number of factors, including (i) the effect or lack thereof on the efficient administration of the estate if the court

recommends abstention; (ii) the extent to which state law issues predominate over bankruptcy issues; (iii) the difficult or unsettled nature of applicable law; (iv) the presence of a related proceeding commenced in state court or other nonbankruptcy proceeding; (v) the jurisdictional basis, if any, other than section 1334; (vi) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (vii) the substance rather than the form of an asserted core proceeding; (viii) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (ix) the burden of the bankruptcy court's docket; (x) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties; (xi) the existence of a right to a jury trial; (xii) the presence in the proceeding of nondebtor parties; (xiii) comity; and (xiv) the possibility of prejudice to other parties in the action. *Gilbane Building Company v. Air Systems, Inc. (In re Encompass Services Corporation)*, 337 B.R. 864, 878 (S.D. Tex. 2006).

47.     The relevant factors weigh overwhelmingly against permissive abstention.

48.     **First**, the administration of the Debtors' estate will be delayed indefinitely by abstention.  As noted, to implement their restructuring through a sale of assets, the Debtors need a final determination as to the validity of Amendment No. 5, and the Debtors cannot obtain that in the New York Court.  As such, abstention would create an untenable catch-22 for the Debtors:  the New York Court could not adjudicate the validity of Amendment No. 5 while the Debtors remain in bankruptcy, and the Debtors could not emerge from bankruptcy without an adjudication of the validity of Amendment No. 5.

49.     **Second**, the issue that is of paramount importance in the Adversary Proceeding is a pure bankruptcy issue—whether Amendment No. 5 (which the Court has already ruled is property of the Debtors' estate) remains valid or, instead, is void *ab initio*.  The state law claims

that Invesco asserts in the Adversary Proceeding are simply a means to resolve this critical issue. *See* 28 U.S.C. § 157(b)(3) ("A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law.").

50.     **Third**, the causes of action asserted in the Adversary Proceeding do not present any difficult or unsettled issues of state law; instead, they present straightforward issues of contract interpretation with which this Court is well-versed.  As Invesco concedes, the question of "whether Amendment No. 5 breached the Credit Agreement" is "the sole determination this Adversary Proceeding concerns."  (Dkt. 96 ¶¶ 1-2.)  Invesco argues that "some of the factual and legal issues" raised by the Adversary Proceeding are "highly complex," (Mot. 24), but that complexity has nothing to do with issues of New York law.  Instead, the only complexity here, if any, has to do with the structure of the underlying liability management transactions.  But this Court is at least as well-equipped as the New York Court—or, for that matter, any court—to unpack such complexity. *See* Memorandum Opinion, *Wesco Aircraft Holdings, Inc. v. SSD Investments Ltd.*, Adv. Pro. No. 23-03091 (Bankr. S.D. Tex. 2023); *In re Serta Simmons Bedding, LLC*, Adv. Pro. No. 23-09001, Dkt. No. 324 (Bankr. S.D. Tex. June 6, 2023).

51.     **Fourth**, at present, there is no "related" non-bankruptcy court action.  The New York Action has been "disposed," meaning the case has been closed.  In any event, if the Court denies abstention, the claims asserted in the New York Action will be subsumed by the Adversary Proceeding.

52.     **Fifth**, the Debtors concede that there is no independent basis for jurisdiction over the claims in the Adversary Proceeding, such as federal question or diversity jurisdiction, making this the only factor that favors abstention.

53.     **Sixth**, the Adversary Proceeding is not just closely related to the Debtors' main bankruptcy case, it is the linchpin of the bankruptcy case.  At the risk of repetition, the Debtors cannot complete their restructuring without an adjudication of the Adversary Proceeding and, in particular, the claim for declaratory judgment as to the validity of Amendment No. 5.  Only this Court can render that adjudication.

54.     **Seventh**, as this Court has found, the Adversary Proceeding is a core proceeding, and the substance of that proceeding—whether Amendment No. 5 is property of the estate—is central to the Debtors' restructuring.

55.     **Eighth**, Invesco argues that because all of the claims asserted in the Adversary Proceeding are non-core, "there is no need to 'sever' non-core claims from core ones." (Mot. 23.) Putting aside that Invesco is wrong about whether the Adversary Proceeding is core, Invesco still misses the point.  If this Court were to abstain, it necessarily would have to sever the Adversary Proceeding claims against the Non-Debtors from those against the Debtors.  That is because, as discussed, the automatic stay prohibits Invesco from proceeding on claims against the Debtors in any court other than this one.  To sever the Adversary Proceeding claims in this manner would not be feasible because all of those claims, whether asserted against the Debtors or the Non-Debtors, arise out of the exact same facts and present the exact same legal issues.  As discussed at length in connection with the Stay Motion, to sever claims surrounding the validity of Amendment No. 5 between this Court and the New York Court would burden two judges with the same factual and legal disputes, waste valuable (and finite) estate resources, doubly distract the Debtors' management from its restructuring efforts, and create the risk of inconsistent judgments.  (Dkt. 57 at 10-11, 22.)  As the Court has already found in the context of the Stay Motion, there is no way

to "disaggregate" the claims against the Debtors from the Non-Debtors, as the Debtors were "involved in every step" of the relevant events here.  (Ex. 13, Hr'g Tr. 94:6-11.)

56.    **Ninth**, there has been no showing by Invesco that this Court's docket would be unduly burdened by retaining jurisdiction over the Adversary Proceeding.  And, while the Debtors do not wish to impose upon this Court, the fact is that this is the only court that can provide the final adjudication concerning the validity of Amendment No. 5 that the Debtors need to complete their restructuring.  The Court has already agreed to preside over this dispute and set aside time to do so in the coming weeks.  (Dkt. 128.)

57.    **Tenth**, Invesco continues to press its baseless allegation that the Debtors "weaponize[d] the bankruptcy process to avoid answering for the Sham Transaction before the New York Court."  (Mot. at 22.)  Invesco's continued allegations of forum-shopping are not well-taken.  In truth, the Debtors commenced this bankruptcy proceeding because, as Invesco itself admits, the Debtors were "hopelessly insolvent" and faced an "inevitable restructuring."  (Dkt. 45 ¶¶ 28, 37.)  Invesco also suggests that the Debtors sought "to extend the automatic stay to halt the New York Action for the benefit of the Non-Debtor Plaintiffs so they can evade the reach of the New York Court."  (Mot. at 22.)  This, too, is silly.  The Debtors sought to extend the automatic stay to the Non-Debtors because proceeding with the New York Action against the Non-Debtors, but not the Debtors, would be wasteful and pointless.  Again, to emerge from bankruptcy, the Debtors need a final adjudication as to the validity of Amendment No. 5, and the New York Court is not in a position to provide that.  The automatic stay indisputably precludes Invesco from joining the Debtors as parties in another court, and the validity of the Debtors' credit agreement cannot be resolved without the Debtors being present.  Thus, allowing Invesco to pursue identical claims against the Non-Debtors in the New York Court would serve only to waste the Debtors' time and

resources, without providing the final adjudication needed to advance their restructuring efforts. That is the reason that the Debtors sought to extend the stay to the Non-Debtors.

58.     **Eleventh**, regardless of whether the Adversary Proceeding is adjudicated in this Court or in the New York Court, there will be no jury trial.  Section 9.11 of the SPCA contains a broad waiver of jury trial that states, in all capital letters:  "EACH PARTY HERETO HEREBY IRREVOCABLY WAIVES, TO THE FULLEST ETENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN ANY SUIT, ACTION, PROCEEDING OR COUNTERCLAIM (WHETHER BASED ON CONTRACT, TORT OR ANY OTHER THEORY) DIRECTLY OR INDIRECTLY ARISING OUT OF OR RELATING TO THIS AGREEMENT, ANY OTHER LOAN DOCUMENT OR THE TRANSACTION CONTEMPLATED HEREBY OR THEREBY."  *See Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp., Inc.*, 56 F.Supp.2d 694, 706 (E.D. La. 1999) ("The Supreme Court has long recognized that a private litigant may waive its right to a jury in civil cases" and such "[w]aiver can be either express or implied.") (citing *Commodity Futures Trading Comm. v. Schor*, 478 U.S. 833, 848 (1986)); *see also Pizza Hut L.L.C. v. Pandya*, 79 F.4th 535, 541 (5th Cir. 2023) ("the party objecting to the enforcement of a waiver [of the right to a jury trial] in a facially valid contract bears the burden of showing the waivers unenforceability.").

59.     **Twelfth**, while the Adversary Proceeding involves the Non-Debtors, those parties are willingly participating in this bankruptcy case and have no objection to this Court serving as the adjudicating forum.  *See In re Brook Mays Music Co.*, 363 B.R. 801, 818 (Bankr. N.D. Tex. 2007) (presence of non-debtor parties did not weigh in favor of abstention; "[t]here are nondebtor parties, but all have participated extensively in the bankruptcy case and would appear not to be inconvenienced by this or the district court forum").

60.     **Thirteenth**, Invesco argues that principles of comity warrant abstention because the claims at issue in the Adversary Proceeding "would require this Court to make determinations concerning the correct interpretation of the Credit Agreement under New York law" that the New York Court purportedly has interest in resolving.  (Mot. at 23.)  There is no comity concern here. As a general matter, there is nothing remotely novel about the state law issues presented by the Adversary Proceeding such that the New York Court would have any unique interest in retaining the matter.  *In re Houston Regional Sports Network, L.P.*, 514 B.R. at 214 ("These are solely state law causes of action between non-debtors.  However, there are no novel issues that present a countervailing state interest.").  The fact that the New York Court has no interest in presiding over the matter could not be clearer here, given that the New York Court has already disposed of the New York Action and, per its prior orders, has no intention of ever addressing any issues raised in the New York Action unless and until "the automatic stay is no longer in effect."  (Ex. 1, March 20, 2024 Order.)

61.     **Fourteenth**, Invesco argues that "no other party in this action will be prejudiced if the Court abstains from hearing the claims."  (Mot. at 25.)  Invesco could not be more wrong.  The Debtors would be severely prejudiced if this Court abstains from adjudicating the Adversary Proceeding because they will be unable to obtain the final judgment concerning the validity of Amendment No. 5 that is needed to complete their restructuring efforts.  Invesco also complains that it "would be significantly prejudiced if it were not allowed to continue the New York Action (Mot. at 25), but never explains how.  Invesco will have the same opportunity to contest the validity of Amendment No. 5 in this Court as it would in the New York Court, and on a faster timeline, so it is difficult to see how Invesco will be prejudiced if this Court declines abstention.

## IV.     TRANSFER TO THE SOUTHERN DISTRICT OF NEW YORK IS NOT APPROPRIATE UNDER SECTION 1404 OR SECTION 1412.

62.     Having failed to offer any basis for this Court to abstain in favor of the now-disposed New York Action, Invesco asks the Court to transfer this Adversary Proceeding to yet another court—the Southern District of New York—which has no familiarity whatsoever with this dispute.  This is proper, Invesco claims, under both Section 1404 and Section 1412.  Invesco is, once again, wrong.  Because courts do not draw any distinction between the factors relevant to a transfer under these provisions, the Debtors will address both in tandem.  *See Campbell v. Williams*, Civ. No. 1:14-cv-097, 2015 WL 3657627, at *2 (S.D. Tex. June 12, 2015) ("[C]ourts apply essentially the same factors in analyzing transfers under §§ 1404(a) and 1412 . . ."); *see also* Mot. at 32 n.15 ("[C]ourts apply the same factors in analyzing transfers under both provisions.").

63.     Invesco's transfer argument is based primarily on the SPCA's forum selection clause, which it claims favors a transfer to the Southern District of New York.  (Mot. at 27-29.) This argument fails for the same reasons as Invesco's position on abstention.  Where, as here, an adversary proceeding implicates "core" claims, a forum-selection clause must yield to the overwhelming public policy interest of adjudicating core bankruptcy issues in the same court in which the bankruptcy is pending.  *See Spillman*, 710 F.3d at 306 (quoting *Mitsui & Co. (USA) v. Mira M/V*, 111 F.3d 33, 35 (5th Cir. 1997) ("[T]he ability of a bankruptcy court to resolve certain statutorily core proceedings implicates a strong public-policy interest.")); *In re Schouten*, No. 23-20078, 2024 WL 994105, at *6 (Bankr. N.D. Tex. March 7, 2024) (declining to grant a transfer based on a forum selection clause and noting the "strong presumption of maintaining the venue of an adversary proceeding where the bankruptcy [case] is pending"); *In re Iridium Operating LLC*, 285 B.R. 822, 837 (S.D.N.Y. 2002) ("[S]ince this Court has previously found the instant adversary proceeding to be a core proceeding in its entirety[,] then the interests of justice and the public interest in the centralization of all bankruptcy proceedings weigh heavily in favor of denying

Motorola's motion to transfer venue."); *N. Parent, Inc. v. Cotter & Co. (In re N. Parent, Inc.)*, 221 B.R. 609, 622 (Bankr. D. Mass. 1998) ("Retaining core proceedings in this Court, in spite of a valid forum selection clause, promotes the well-defined policy goals of centralizing all bankruptcy matters in a specialized forum to ensure the expeditious reorganization of debtors.").

64.    Indeed, Invesco concedes that core claims are subject to a "'home court' presumption" in bankruptcy court because such matters are "properly handled in a single, centralized forum." (Mot. at 33) (quoting *In re Cont'l Air Lines Inc.*, 61 B.R. 758, 770 n.25 (S.D. Tex. 1986).) Thus, Invesco's entire transfer argument hinges on its incorrect assumption that the claims at issue are ***not*** core. Invesco is wrong for all of the reasons set forth above. *See supra* Section II.C. And this Court has already found that the dispute is "core" in connection with its ruling on the Stay Motion and the disputed scheduling order.[5] Invesco's Motion should be denied on that basis alone.

65.    Invesco also ignores the "other public interest factors that arise in the bankruptcy context," including "the 'creditors' interests since the estate is often operating on limited funds and asserting actions solely to maximize the recovery to creditors,'" and the "paramount" consideration of "the economical and efficient administration of the bankruptcy estate." *In re Schouten*, 2024 WL 994105, at *6-7 (citing *In re commonwealth Oil Ref. Co.*, 596 F.2d 1239, 1247 (5th Cir. 1979)). There can be no dispute that these bankruptcy-focused factors weigh heavily against a transfer here. The Debtors' creditors would be better served by maintaining this Adversary Proceeding in the same venue in which the underlying bankruptcy proceedings are

---

[5] While the Debtors are aware that the Court resolved these matters solely in the context of the Stay Motion, the Court could just as well rely on its prior decisions to dispose of Invesco's arguments here, as they are now the law of the case. *See Quicksilver Res., Inc. v. Eagle Drilling, LLC*, 2008 WL 3165745, at *5 (S.D. Tex. Aug. 4, 2008) ("[W]hen a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages of the same case.").

pending, as evidenced by the fact that the Non-Debtor Parties, which comprise the Debtors' largest creditors, object to a transfer. Moreover, keeping the Adversary Proceeding before this Court would promote the economic and efficient administration of the Debtors' estate. This Court understands the issues presented by the parties' respective claims in the Adversary Proceeding and expects to make a final decision on the merits by the end of June 2024, at the latest. Even under the most ambitious post-transfer schedule, a transfer to a new jurisdiction would almost certainly result in further delay, forcing the Debtors to incur additional time and expense in litigating these issues.

66.     While Invesco cites four general "public interest factors" in its brief, none of those factors counsels in favor of a transfer. (Mot. at 29.) First, where, as here, there is no evidence that either the transferring court or the transferee court would be "overburdened" by presiding over the case, the court should "give[] no weight" to the factor of court congestion. *Longhorn*, 408 B.R. at 101. Second, New York has no "local interest" (or, for that matter, any real articulable interest) in this Adversary Proceeding. Invesco admits that the parties are not citizens of New York, (Mot. at 18), and to the extent Robertshaw breached the SPCA at all, such a breach would have occurred either where Robertshaw is incorporated (Delaware), or where its principal place of business is located (Illinois). Third, this Court can readily address the straightforward issues of New York contract law in this case, as this Court has done in substantially similar cases. *See, e.g., Serta*, Adv. Pro. No. 23-09001. Fourth, where "[n]o party suggested that this Court's retention of jurisdiction would give rise to conflict of law issues or the need to apply foreign law," the final factor is neutral as well. *Longhorn*, 408 B.R. at 101. It is unclear why—after agreeing to a trial schedule before this Court—Invesco feels that it must now wrest this case away from the Court. Whatever Invesco's reasons, the Court should decline.

## **CONCLUSION**

67.     For the foregoing reasons, the Debtors respectfully request that the Court deny Invesco's Abstention Motion.

*[Remainder of this page left intentionally blank.]*

Dated: April 19, 2024

*/s/ Timothy A. ("Tad") Davidson II*
Timothy A. ("Tad") Davidson II (Texas Bar No. 24012503)
Ashley L. Harper (Texas Bar No. 24065272)
Philip M. Guffy (Texas Bar No. 24113705)
**HUNTON ANDREWS KURTH LLP**
600 Travis Street, Suite 4200
Houston, TX 77002
Telephone: (713) 220-4200
Email:  taddavidson@HuntonAK.com
           ashleyharper@HuntonAK.com
           pguffy@HuntonAK.com

- and -

George A. Davis
George Klidonas
Adam S. Ravin
Eric F. Leon
Kuan Huang
Ryan Jones
**LATHAM & WATKINS LLP**
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Email:  george.davis@lw.com
           george.klidonas@lw.com
           adam.ravin@lw.com
           eric.leon@lw.com
           kuan.huang@lw.com
           ryan.jones@lw.com

*Co-Counsel for the Debtors and Debtors in Possession*

## **Certificate of Service**

I certify that on April 19, 2024, a true and correct copy of the foregoing document was served by the Electronic Case Filing System for the United States Bankruptcy Court for the Southern District of Texas on those parties registered to receive electronic notices.

*/s/ Timothy A. ("Tad") Davidson II*
Timothy A. ("Tad") Davidson II