United States Bankruptcy Court
Southern District of Texas

**ENTERED**
July 02, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| INVESCO SENIOR SECURED MANAGEMENT, INC., *et al.*, | § § § § § § | Civil Action No. 4:24-cv-02426 <br> 4:24-cv-02592 <br> 4:24-cv-03298 <br> 4:24-cv-03416 |
| *Appellants,* | § § | |
| ROBERTSHAW US HOLDING CORP., *et al.*, | § § § | |
| *Appellees.* | § § | |
| In re: | § § | Bankruptcy Case No. 24-90052 (CML) |
| ROBERTSHAW US HOLDING CORP., *et al.*, | § § § § | (Chapter 11) |
| *Debtors.* | § § § | |

**MEMORANDUM OPINION AND ORDER**

This is a consolidated bankruptcy appeal and cross-appeal of the bankruptcy court's

Memorandum Decision and Order ("Memorandum Decision") entered on June 20, 2024, in

the adversary proceeding captioned *Robertshaw US Holding Corp. v. Invesco Senior Secured*

*Management, Inc.*, Adv. Proc. No. 24-03024 (CML), 662 B.R. 146 (Bankr. S.D. Tex.). The

appellants are collectively "Invesco," the appellees are Robertshaw, the Ad Hoc Group, and

One Rock, and the cross-appellant is Robertshaw. The Court **AFFIRMS** the bankruptcy

court's Memorandum Decision.

## I.  BACKGROUND

The underlying facts are complex and were strenuously disputed during a six-day trial held in the adversary proceeding.  Following trial, the bankruptcy court set forth the relevant facts and findings in its Memorandum Decision, including the following overview and factual synopsis:

> This case is about a dispute involving liability management transactions between the Debtor, its equity sponsor, and some of its secured creditors.  It is also about the desire of some lenders to obtain majority status under a credit agreement and then aggressively exercise related rights.  Some lenders believe majority status gives them unfettered power to control when a debtor starts a bankruptcy case and what will happen during that case.  This Court does not know whether this case is in or out of step with the norm.  Parties engage in liability management transactions to try and unlock value in credit agreements. Lenders are sometimes plaintiffs in one case and defendants in another.  This decision is limited to the unique facts of this case.
>
> In late 2022, Robertshaw experienced financial difficulty, so it engaged in liability management transactions with Invesco Senior Secured Management, Inc. and certain related funds ("Invesco") and the "Lender Plaintiffs" in this case: Bain Capital Credit, LP on behalf of certain of its managed funds ("Bain Capital"), Canyon Capital Advisors LLC on behalf of certain of its managed funds ("Canyon Capital"), and Eaton Vance Management on behalf of certain of its managed funds ("Eaton Vance").
>
> Robertshaw faced another liquidity challenge later that year. What followed is a series of events ending in a bitter dispute between lenders.
>
> In the fall of 2023, Invesco became the "Required Lender" under a superpriority credit agreement ["SPCA"] and aggressively exercised its rights. It had Robertshaw enter into four amendments to the agreement without informing the other lenders. Even the administrative agent was directed to stay silent.  Invesco waived Robertshaw payment defaults and extended runways in exchange for additional liquidity and more benefits.  The last amendment included milestones: Robertshaw had to file bankruptcy by January 2, 2024,

agree on who would be the stalking horse in a chapter 11 case, and appoint an "independent director"—who had sole authority to work on Invesco's milestones.

But the Lender Plaintiffs found out by chance about the amendments and quickly organized. Lawyers and advisors for Robertshaw and the Lender Plaintiffs formulated their own liability management transactions late in December 2023 ("December Transactions"). One Rock Capital Partners, LLC on behalf of certain of its managed funds ("One Rock"), the equity sponsor, participated in the December Transactions. The December Transactions paid Invesco over $90 million and had the effect of shifting Required Lender status from Invesco to the Lender Plaintiffs.

Invesco sued the Lender Plaintiffs and One Rock in New York State Court in December 2023. It believes that the December Transactions are a sham and that Invesco remains the Required Lender and the primary secured creditor in control. Robertshaw started these chapter 11 cases in February 2024. On the same day, Robertshaw, One Rock, and the Lender Plaintiffs started this [adversary proceeding] against Invesco.

This Court held a six-day trial. For the reasons stated below, the Court finds that Robertshaw breached the credit agreement. The Lender Plaintiffs are entitled to a declaration that they did not breach the credit agreement and are the Required Lenders. One Rock is entitled to a declaration that it did not tortiously interfere with the credit agreement under New York law. Finally, Robertshaw, the Lender Plaintiffs, and One Rock are entitled to a declaration that they did not breach the implied covenant of good faith and fair dealing under New York law.

New York law gives Invesco the right to assert money damages against Robertshaw for the prepetition breach of contract. Rescission of an amendment entered during the December Transactions is not required under New York law or warranted on this record. And this Court declines to exercise any equitable remedies.

662 B.R. 146, 150–151 (footnote omitted).  The Memorandum Decision additionally sets forth an extensive and detailed recap of the evidence and chronology of the underlying transactions, which will not be restated here.

The appellants argue that the Memorandum Decision must be reversed because the bankruptcy court (1) abused its discretion in not abstaining under 28 U.S.C. § 1334(c)(2); (2) clearly erred in finding that the Ad Hoc Group did not breach the SPCA or the implied covenant of good faith and fair dealing; and (3) clearly erred in finding that One Rock did not tortiously interfere with the SPCA.

Cross-appellant Robertshaw argues that the bankruptcy court's determination that Robertshaw breached the SPCA is clearly erroneous and must be set aside.  Robertshaw contends that the remaining portion of the Memorandum Decision should be affirmed.

## II.  ANALYSIS

A.    <u>Legal Standard</u>

The standard of review for a bankruptcy appeal is the same standard used by an appellate court reviewing a district court proceeding.  *In re Killebrew*, 888 F.2d 1516, 1519 (5th Cir. 1989).  Accordingly, the district court reviews the bankruptcy court's conclusions of law *de novo*, findings of fact for clear error, and mixed questions of law and fact *de novo*. *In re Nat'l Gypsum Co.*, 208 F.3d 498, 504 (5th Cir. 2000).

The Court has carefully reviewed the bankruptcy court's Memorandum Decision, the trial transcripts, records, the parties' briefings, and the applicable law, and finds no reason to disturb the findings and conclusions of the bankruptcy court.

B.      Abstention Under § 1334(c)(2)

The appellants claim that the bankruptcy court abused its discretion in declining to mandatorily abstain under 28 U.S.C. § 1334(c)(2) from adjudicating the state law claims in the adversary proceeding.  In support, the appellants contend that the state law claims were non-core claims that could have been timely adjudicated in the New York state court proceeding.

Under 28 U.S.C. § 1334(c)(2), federal courts must abstain from exercising "related to" jurisdiction where an action (1) could not have been commenced in federal court absent jurisdiction under § 1334; (2) the claim is a non-core proceeding; (3) the action was commenced in a state court; and (4) the action can be timely adjudicated in state court. *In re Moore*, 739 F.3d 724, 728 (5th Cir. 2014).  All four requirements must be satisfied for mandatory abstention to apply. *In re Dune Energy, Inc.*, 575 B.R. 716, 729 (Bankr. W.D. Tex. 2017).

At the hearing held April 30, 2024, the bankruptcy court ruled on the record that the New York state law claims were core claims inextricably intertwined with the federal bankruptcy claims and should be adjudicated within the federal court adversary proceeding.

5

The bankruptcy court further ruled on the record that the appellants did not establish that the New York state court proceeding could be timely adjudicated.

Section 1334 grants district courts jurisdiction over bankruptcy proceedings, but mandates abstention from hearing non-core proceedings where an action has been "commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction." 28 U.S.C. § 1334(c)(2). Although the appellants argue at length that the claims were non-core and could have been timely adjudicated in the New York action, the bankruptcy court was of the opinion that any non-core New York claims were inextricably intertwined with the federal bankruptcy claims, such that the bankruptcy court could adjudicate the claims within the adversary proceeding as core claims. *See, e.g., In re Spillman Development Group, Ltd.*, 710 F.3d 299, 306 (5th Cir. 2013) (holding that creditor's state contract-law claims were inextricably intertwined with the interpretation of a right created by federal bankruptcy law and could be adjudicated by bankruptcy court). Even if this were an incorrect resolution, the bankruptcy court further found that the appellants did not establish that the claims could have been timely adjudicated within the New York case. Although the appellants argue that the bankruptcy court applied an incorrect metric in stating that it could adjudicate the state law claims *faster* than the New York state court, the bankruptcy court made no such determination. The appellants do not establish grounds for setting aside the bankruptcy court's denial of mandatory abstention.

6

Because the bankruptcy court did not err in holding that any non-core New York state court claims were inextricably intertwined with the federal bankruptcy claims and were thus "core," it therefore had statutory and constitutional authority to enter a final order in the adversary proceeding.

### C.      Ad Hoc Group Breach

The appellants next argue that the Court should reverse the bankruptcy court's findings and conclusions that the Ad Hoc Group did not breach the SPCA or the implied covenant of good faith and fair dealing. In support, they contend that because the bankruptcy court correctly ruled that the December 2023 Transaction breached the SPCA, Robertshaw's breach necessarily means that the Ad Hoc Group breached the SPCA. The appellants further contend that the Ad Hoc Group breached the implied covenant of good faith and fair dealing.

As correctly stated by the bankruptcy court in its Memorandum Decision,

> New York law implies a duty of good faith and fair dealing in every contract. The duty comprises "any promises which a reasonable person in the position of the promisee would be justified in understanding were included [in the contract]." *Dalton v. Educ. Testing. Serv.*, 663 N.E.2d 289, 291 (N.Y. 1995). The implied covenant prevents parties from "do[ing] anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Brown v. Erie Ins.*, 172 N.Y.S.3d 299, 301 (App. Div. 2022). "Absent a connection to an express or presumed contractual right or obligation, the doctrine does not import a generalized code of good conduct into the law of contracts." *Cambridge Cap. LLC v. Ruby Has LLC*, 565 F. Supp. 3d 420, 456 (S.D.N.Y. 2021). It also cannot be used to create new and independent contractual rights. *Fesseha v. TD Waterhouse Inv. Servs., Inc.*, 761 N.Y.S.2d 22, 23 (App. Div. 2003).

662 B.R. 166–67 (citations modified).

These issues turn largely on the underlying facts, not the law, and the Court finds no error in the bankruptcy court's analysis of the underlying facts.  The appellants essentially maintain that the Ad Hoc Group violated both the spirit and the letter of the SPCA in unilaterally permitting the issuance of additional debt, and thus breached the contract and the implied covenant of good faith and fair dealing.  However, the appellants' interpretation of the Ad Hoc Group's actions as having a nefarious goal of "influencing the voting threshold" to dislodge Invesco's status was not the sole available interpretation.  As the appellants acknowledge, the bankruptcy court accepted the appellees' testimony that the purpose of the December 2023 Transaction was to avoid a Chapter 11 filing.  The appellants complain that this allows a party to "easily conjure up a salutary goal" to thwart contractual provisions.  Nevertheless, this potential outcome was suggested, but not established, by the appellants at trial and does not constitute grounds for setting aside the bankruptcy court's findings and conclusions.

The Court finds no error in the bankruptcy court's findings and conclusions under the clear error and *de novo* standards of review as to these issues.

D.    One Rock Tortious Interference

Invesco claimed in the adversary proceeding that One Rock tortiously interfered with the SPCA by colluding and conspiring with the Lender Plaintiffs and participating in the December Transactions.  One Rock sought a declaratory judgment that it did not tortiously

interfere with the SPCA. Following the six-day trial, the bankruptcy court agreed with One Rock and granted the declaratory judgment in its favor. The appellants contend the bankruptcy court's ruling was in error because One Rock intentionally procured a breach, was the "but for" cause of the breach, and it was not entitled to an economic interest defense.

The parties agreed that the tortious interference claim was governed by New York law, which required (1) the existence of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of the third party's breach of the contract without justification; (4) an actual breach of the contract; and (5) resulting damages. 662 B.R. at 164–65. *See Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401–02 (2d Cir. 2006) (setting forth the five elements of tortious interference under New York state law). To prove intentional procurement without justification under New York state law, a plaintiff must prove (i) that the target of a defendant's conduct was the third party's contractual arrangements with the plaintiff and (ii) that the defendant's objective was to procure such a breach. *Better Holdco., Inc. v. Beeline Loans, Inc.*, 666 F. Supp.3d 328, 399 (S.D.N.Y. 2023). The interference "must be intentional, not merely negligent or incidental to some other, lawful purpose." *Id.* A plaintiff must also allege and show that "the contract would not have been breached 'but for' the defendant's conduct." *See Burrowes v. Combs*, 808 N.Y.S.2d 50, 53 (App. Div. 2006). The bankruptcy court expressly cited and relied on these cases and factors in the Memorandum Decision. 662 B.R. 164–65.

In response to a tortious interference claim, a creditor or equity holder may raise an economic interest defense under New York law by showing that it acted to protect its own legal or financial stake in the breaching party's business. *Abele Tractor & Equip. Co. v. Schaeffer*, 91 N.Y.S.3d 548, 551 (App. Div. 2018). The defense is raised when "defendants were significant stockholders in the breaching party's business; where defendant and the breaching party had a parent-subsidiary relationship; where defendant was the breaching party's creditor; and where the defendant had a managerial contract with the breaching party at the time defendant induced the breach of contract with plaintiff." *Id.*; *see also White Plains Coat & Apron Co. v. Cintas Corp.*, 8 N.Y.3d 422, 835 N.Y.S.2d 530, 867 N.E.2d 381, 384 (2007). "[I]mposition of liability in spite of a defense of economic interest requires a showing of either malice on the one hand, or fraudulent or illegal means on the other." *WMW Mach. Co. v. Koerber AG*, 658 N.Y.S.2d 385, 386 (App. Div. 1997).

The bankruptcy court found as follows in the Memorandum Decision:

> Based on the record, this Court has no doubt that One Rock did not tortiously interfere with the SPCA. One Rock did not intentionally procure any breach of the SPCA, and One Rock was not the but for cause of any such breach by Robertshaw or the Lender Plaintiffs—and that does not even account for the economic interest defense.

> Mr. Beyer testified that One Rock's goal was to help Robertshaw finance its turnaround plan by providing it necessary liquidity and avoiding the harm caused by a January 2, 2024 bankruptcy filing. One Rock did not structure the December Transactions or influence the Lender Plaintiffs or Robertshaw to do it. It also did not vote on the December Transactions.

10

Invesco's arguments that One Rock conspired or colluded with the Lender Plaintiffs fail to establish but for causation, necessary to establish tortious interference with a contract. Robertshaw's actions were informed by its advisors and its independent director.  The Lender Plaintiffs also independently decided to enter into the December Transactions. Lenders had their own reasons for entering into the December Transactions, including concerns from Robertshaw management that Invesco intended to uptier its Third-Out debt and their belief that it would prevent an unnecessary bankruptcy filing.

Declaratory judgment is warranted for these reasons alone.  But even if a prima facie showing of tortious interference could be established by Invesco, the economic interest defense would overcome any such claim.  One Rock supported Robertshaw's turnaround plan and efforts to increase liquidity and believed a January 2024 filing would harm Robertshaw.  Mr. Beyer's testimony was supported by the facts in the record.  One Rock had a right under New York law to protect its economic interest in Robertshaw by entering into the December Transactions and not allowing what it believed to be a value-destructive bankruptcy filing.  That Robertshaw ended up filing bankruptcy (in part because additional liquidity Robertshaw received is tied up in litigation with Invesco) or that parties understood Robertshaw could potentially file does not change the answer.  There is no meaningful evidence that One Rock acted for any reason other than to protect its economic interest, and there is no evidence of malice or fraudulent or illegal means that would overcome the defense.

662 B.R. at 165–66 (citations and footnotes omitted).

The appellants argue that the bankruptcy court's findings and conclusions are wrong in that it misinterpreted New York law and misapplied it to the facts.  They contend that One Rock was an integral part of the December 2023 Transaction and its actions benefitted itself at the expense of Robertshaw.  This Court already considered the issue of tortious interference when it addressed and denied the appellants' motion to stay the underlying bankruptcy orders.  In its order of October 1, 2024, the Court held that, "In this instance, the

other investors were acting to protect their economic interests after learning of Invesco's secretive acts in furtherance of Invesco's own interests.  As a result, there is no basis for a finding of tortious interference with contract under New York law." (Docket Entry No. 77.)

The Court has again considered the appellants' arguments as to tortious interference under the applicable standards, and finds no error in the bankruptcy court's Memorandum Decision finding that there was no tortious interference.

E.     Robertshaw Cross-Appeal

In its cross-appeal, Robertshaw argues that the bankruptcy court erred in holding that it breached section 2.11(b)(iii) of the SPCA and that Amendment No. 5 did not waive any breach. Robertshaw's argument is two-fold: first, that the finding rests on a misinterpretation of the SPCA's use of "Subsidiary" (as a defined term)  and "subsidiary" (as a non-defined term) because the discrepancy was a "scrivener's error"; and second, that the finding as to non-waiver rests on a misinterpretation of the Required Lender powers in Section 9.02(b) and the prepayment deadline in Section 2.11(b)(iii).

As explained in the Memorandum Decision, a scrivener's error must be shown by clear and convincing evidence of obvious error. *See NCCMI, Inc. v. Bersin Props., LLC*, 208 N.Y.S.3d 27, 32 (App. Div. 2024). Outside an actual claim for reformation of contract, a court may correct a scrivener's error in "those limited circumstances where some absurdity has been identified or the contract would be otherwise unenforceable." *Id.* at 32; *see also PNC Cap. Recovery v. Mech. Parking Sys., Inc.*, 726 N.Y.S.2d 394, 397 (App. Div. 2001)

(reforming a scrivener's error when the court found it would otherwise produce the illogical result that a company could guaranty its own indebtedness). This burden imposes an intentionally high bar on the party arguing there is an error. *Id.*

The record does not establish that the capitalized "S" in the first use of the word "Subsidiary" in the SPCA was clearly a typographical error or "scrivener's error." Nor does enforcing the SPCA on its own terms lead to illogical or absurd interpretations of the text. As stated in the Memorandum Decision, "The SPCA was negotiated between sophisticated parties. Without clear evidence to the contrary, the Court must enforce the SPCA as written. RS Funding is a "Subsidiary" that incurred "Indebtedness" in violation of Section 6.01." 662 B.R. at 160.

The Court further finds no error in the bankruptcy court's determinations that Amendment No. 5 did not waive any breach, and that "Because Robertshaw failed to pay 100% of the Net Proceeds as a mandatory prepayment, it breached Section 2.11(b)(iii) of the SPCA only by not paying all the proceeds." *Id.* at 161. As noted by the bankruptcy court in its Memorandum Decision, "The SPCA contemplates that a Subsidiary may incur Indebtedness that violates Section 6.01, and that Robertshaw may receive proceeds on account of that Indebtedness. It provides the remedy for that violation in Section 2.11." 662 B.R. at 160. The bankruptcy court carefully set out the relevant contractual provisions and the evidence supporting its analysis and resolution, and the Court finds no meritorious

grounds for disturbing the bankruptcy court's ensuing findings and conclusions. *Id*. at 158, 160–161.

Although the Court understands Robertshaw's disagreements with the findings and conclusions and has carefully considered the matters of record it cites in support of its position, the Court is bound by the well settled standards of review. Under those standards, the Court reviews conclusions of law and mixed questions of law and fact *de novo*, and findings of fact for clear error. Having applied those standards to the record, the Court finds no basis for setting aside the bankruptcy court's findings and conclusions as to Robertshaw's breach of the contract.

### III.  CONCLUSION

For the above reasons, the bankruptcy court's Memorandum Decision is **AFFIRMED**. The appeal is **DISMISSED**.  All pending motions are **DENIED** as moot.

**IT IS SO ORDERED**.

Signed at Houston, Texas, on this the 1st day of July, 2026.

KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE